**UNITED STATES of America ex rel. John W. SINGER**

v.

**David N. MYERS, Superintendent, Appellant.**

No. 16370.

United States Court of Appeals Third Circuit.

Argued June 8, 1967.

Decided Oct. 20, 1967.

Rehearing Denied Dec. 12, 1967.

James E. O'Brien, Asst. Dist. Atty., Lackawanna County, Scranton, Pa. (Joseph J. Cimino, Dist. Atty. of Lackawanna County, Scranton, Pa., on the brief), for appellant.

Aaron D. Blumberg, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee.

Before STALEY, Chief Judge, KALODNER, Circuit Judge, and SHERIDAN, District Judge.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

Following a jury trial in November, 1962, in the Court of Oyer and Terminer, Lackawanna County, Pennsylvania, in which he and two co-defendants were found guilty of rape, the appellee John W. Singer, was sentenced to a 6 to 15 year prison term which he is now serving in the Eastern Correctional Institution at Graterford, Pennsylvania.

The District Court for the Eastern District of Pennsylvania, in an Order entered October 27, 1966, granted Singer's petition for a writ of habeas corpus on its finding that a statement which Singer signed in the course of police investigation was "involuntary", and that its admission into evidence at his trial violated his federal constitutional rights.[1]

The respondent in the habeas corpus proceedings, David N. Myers, Superintendent of the state prison, has appealed. He contends: (1) the statement was "in all respects voluntary"; (2) in any event, Singer's failure to raise the question of the voluntariness of the statement at his trial "constituted a deliberate circumvention of state procedures" barring federal review; and (3) even if Singer is not now barred from raising the question, the District Court should have "returned 'the case' to the state court for an evidentiary hearing on this issue".

Singer in reply urges that: (1) the District Court's conclusion that his "confession" was "coerced" and "involuntry" is supported by the evidence; (2) his failure to raise the question of the voluntariness of his "confession" at his trial does not bar him from relief in the Federal courts; and (3) the District Court did not err in refusing to return the case to the state courts for a hearing on that issue.

The available record discloses that at about 9:30 or 10:00 P.M. Friday, October 19, 1962, a car driven by Singer's co-defendant, Douglas Reilly, with Paul Snopek, Singer's other co-defendant, in the front seat and Singer in the rear, pulled over to the curb where a twenty-six year old woman was walking, and one of the three forced the woman inside. Reilly then drove to a mountain road where the woman was allegedly raped by at least two of the men.

There is some dispute as to the extent of Singer's participation in the crime. There was trial testimony that he was one of the men who raped the woman. Singer testified, however, both at the trial and in the District Court, that he never had intercourse with the woman or attempted to force her to have intercourse with him, that he in fact tried to protect her from the advances of the other two men and that in doing so, a fight ensued during which he was clubbed unconscious.

It is undisputed that a fight did break out among the men at the scene of the rape; that Singer was knocked unconscious and left there by Reilly and Snopek; upon regaining consciousness,

---

1. The District Court's opinion is reported at 260 F.Supp. 91 (E.D.Pa.1966).

he walked to the main highway and obtained a lift to a friend's home about 1:00 A.M., Saturday morning, October 20, 1962; he later went home and fell asleep at about 2:30 A.M. ; he was awakened at about 4:30 A.M. by Pennsylvania State Police who arrested him and took him to the police barracks for interrogation in connection with the rape.

Singer was interrogated at the barracks from about 5:00 A.M. to about 8:30 A.M. at which time the police took him to the scene of the occurrence where he pointed out to them certain details of the crime. The police then took him to a restaurant for breakfast, and about 10:00 A.M., he and the officers returned to the police barracks. Shortly thereafter, Singer's interrogation continued, and about 2 P.M. Saturday afternoon, he signed a statement typed by the police.

In it, Singer said that Snopek forced the woman into the car and that Reilly then drove to a mountain road; Singer tried to have intercourse with the woman, but was unsuccessful; the other two men then tried to molest her, whereupon he went to her aid and the fight described above broke out.

Singer claims that while he was in police custody, he was tired from lack of sleep, and that as a result of his earlier fight with Reilly and Snopek, his face looked like a "beefsteak, bruised, red and well-battered", and that he could not hear out of his left ear.[2] He also claims that during the time he was in custody, the police denied his request for a doctor and a lawyer; several statements were prepared by the police which he refused to sign; and that he finally signed one statement without reading it, because, in his words:

"Well, I—like I say, I wore out. I was—I knew I had no other help.

"I knew they would keep questioning me until they got it the way they wanted it anyhow. They wouldn't let me call a lawyer or nothing."

The appellant Myers contends that police officers testified that only one statement was prepared by them which Singer read before signing and that Singer did not at the time request a doctor or a lawyer. Appellant further contends that although the signs of Singer's fight with Reilly and Snopek were visible, "his condition was definitely not such as would render his statement involuntary."

Singer was brought before a Justice of the Peace at approximately 3:00 in the afternoon of Saturday, October 20, 1962 and pleaded "not guilty". He was thereafter indicted and charged with rape.

At the joint trial of the three co-defendants, when the prosecution attempted to introduce Singer's statement into evidence, his attorney objected. However, the objection seems to have been based solely on the grounds that it was *ex parte* and induced by the police, and that it implicated Singer's co-defendants. It appears to be undisputed that Singer's counsel never objected to the statement on the ground that it was "involuntary" and that Singer's present Constitutional claims were never specifically raised at his trial.

Despite the objection, the statement was admitted into evidence and the jury found Singer and his two co-defendants guilty.

Singer did not appeal from his judgment of conviction, but on December 5, 1964, he filed a petition for a writ of habeas corpus in the Court of Common Pleas of Lackawanna County, Pennsylvania, contending, *inter alia*, that the statement admitted into evidence at his trial was involuntarily given and the product of police coercion in violation of his Fourteenth Amendment rights. The Court denied the petition, without hearing, after concluding that "the voluntariness of the confession was neither

---

2. It must be emphasized that Singer does not claim that his physical condition was due to any action by the police, but claims that it resulted solely from his earlier fight with his two co-defendants.

controverted nor at issue in the trial" and that "there is no issue of fact to decide at a hearing." Commonwealth ex rel. Singer v. Myers, Opinion of Hoban, P. J., Court of Common Pleas, Lackawanna County, Pa., No. 823, November Term, 1964. The Superior Court of Pennsylvania affirmed *per curiam*, with two judges dissenting. Commonwealth ex rel. Singer v. Myers, 206 Pa.Super. 559, 213 A.2d 685 (1965). The Supreme Court of Pennsylvania denied review.

Singer filed the instant petition in the District Court on March 25, 1966, alleging that the statement he gave the police was involuntary and "coerced", and that its admission into evidence at his trial was a denial of due process.

In granting it, after hearing, the District Court said in its opinion:

"Tested by * * * federal standards, the [state] trial record falls far short of establishing such an intentional bypassing of state procedure as to amount to a waiver of the right to federal review." [3]

and

"Tested against federal standards, we have concluded that the relator's confession was involuntary." [4]

The District Court rejected Myers' contention that should it conclude that an issue of voluntariness in Singer's statement had been presented, it should afford the Pennsylvania courts an opportunity for an evidentiary hearing. It construed Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) as not requiring such action.

We are of the opinion that the District Court erred in failing to afford the Pennsylvania courts a reasonable opportunity to conduct an evidentiary hearing on the issue of voluntariness under the teaching of Jackson v. Denno, supra.

We are further of the opinion that since Pennsylvania has enacted a post-conviction statute which affords an available remedy to correct an abuse of

federal due process in the administration of its criminal laws, that the District Court erred in failing to abstain from acting on Singer's habeas corpus petition pending exhaustion of his post-conviction remedy. Case v. State of Nebraska, 381 U.S. 336–337, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965).

■ First, as to Jackson v. Denno, supra:

There, the Supreme Court held that where one "has not been given an adequate hearing upon the voluntariness of his confession he must be given one",[5] and that such hearing "should occur initially in the state courts rather than in the federal habeas corpus court".[6]

In doing so the Court said at page 393, 84 Ct. at page 1789:

"* * * [W]e think that the further proceedings to which Jackson is entitled should occur initially in the state courts rather than in the federal habeas corpus court. Jackson's trial did not comport with constitutional standards and he is entitled to a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures; the State is also entitled to make this determination before this Court considers the case on direct review or a petition for habeas corpus is filed in a Federal District Court. This was the disposition in Rogers v. Richmond, supra, [365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760] where, in a case coming to this Court

from a denial of a habeas corpus, the Court ascertained a trial error of constitutional dimension:

"'A state defendant should have the opportunity to have all issues which may be determinative of his guilt tried by a state judge or a state jury under appropriate state procedures which conform to the requirements of the Fourteenth Amendment. * * * [T]he State, too, has a weighty interest in having valid federal constitu-

---

3.  260 F.Supp. 93.

4.  260 F.Supp. 93.

5.  378 U.S. 391, 84 S.Ct. 1788.

6.  378 U.S. 393, 84 S.Ct. 1789.

tional criteria applied in the administration of its criminal law by its own courts and juries. To require a federal judge exercising habeas corpus jurisdiction to attempt to combine within himself the proper functions of judge and jury in a state trial—to ask him to approximate the sympathies of the defendant's peers or to make the rulings which the state trial judge might make * * * —is potentially to prejudice state defendants claiming federal rights and to preempt functions that belong to state machinery in the administration of state criminal law.' 365 U.S. at 547–548, 81 S.Ct. at 743."

We applied the teaching of Jackson v. Denno, supra, in United States ex rel. Dickerson v. Rundel, 363 F.2d 126 (3 Cir. 1966), where, after noting that "the same body that found Dickerson guilty of murder in the first degree also determined the issue of the voluntariness of his statements given to the police * * in violation of Dickerson's constitutional privilege, as announced in Jackson v. Denno * * * ", we affirmed the order of the District Court granting a writ of habeas corpus, with the modification that: "The writ will be stayed pending a decision of the District Attorney of Philadelphia to either appeal the order of this court to the Supreme Court of the United States or to grant Murray Dickerson an evidentiary hearing on the voluntariness of his statements." 363 F. 2d 130.

This procedure of remitting a federal habeas corpus petitioner to the state courts for an evidentiary hearing to determine facts relevant to his federal constitutional claims has been utilized in other cases.[7]

The facts in Tyler v. Croom, 264 F. Supp. 415 (E.D.N.C. 1967), are analogous to those in the present case. In *Tyler,* a North Carolina prisoner sought federal habeas corpus alleging that he had been deprived of "effective assistance of counsel" at his state court trial. The District Court concluded that the relator's claims could not be resolved without an evidentiary hearing. It also found that the state court had not afforded the relator an opportunity to offer any evidence in support of his allegations and had denied him relief without a hearing and that the North Carolina Supreme Court denied review. However, the District Court "abstain[ed] from present determination of petitioner's allegations", giving the state court an opportunity to afford him a "plenary post-conviction hearing" in accordance with state procedures. 264 F.Supp. 418. In so doing, the Court stated:

" * * * Where a hearing is required to determine factual issues that cannot be determined from the record, the hearing should be held initially by the state courts in accordance with valid state procedures before a federal district court is called upon to consider petitioner's constitutional claims— only thus can the state courts exercise their primary responsibility to correct their own errors and avoid abdicating their jurisdiction to the federal courts. * * *

\* \* \* \* \* \*

7.  Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964); United States ex rel. Wynn v. Wilkins, 342 F.2d 777 (2 Cir. 1965); Burns v. Beto, 371 F.2d 598 (5 Cir. 1966); Mitchell v. Stephens, 353 F.2d 129 (8 Cir. 1965), cert. den'd 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966); Minnesota ex rel. Holscher v. Tahash, 364 F.2d 922 (8 Cir. 1966); Carter v. Eyman, 265 F.Supp. 957 (D.C.Ariz.1967); Tyler v. Croom, 264 F.Supp. 415 (E.D.N.C.1967); Brown v. Heinz, 248 F.Supp. 293 (N.D.Cal. 1965); Trotter v. Stephens, 241 F.Supp. 33 (E.D.Ark.1965), aff'd Harris v. Stephens, 361 F.2d 888 (8 Cir. 1966); United States ex rel. Schompert v. LaVallee, 238 F.Supp. 265 (N.D.N.Y.1965). See also, Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951). Cf. United States ex rel. McDonald v. Com. of Pennsylvania, 343 F.2d 447 (3 Cir. 1965); United States ex rel. Dalton v. Myers, 342 F.2d 202 (3 Cir. 1965).

"Therefore, it is North Carolina, not the federal habeas corpus court, which should first provide [Relator] with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the effective assistance of counsel at his trial. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

"We therefore abstain from present determination of petitioner's allegations and retain this cause awaiting state court proceedings in accordance with this opinion; * * * 264 F. Supp. 417–418

The Court in Tyler v. Croom, supra, correctly construed and applied the teaching of Jackson v. Denno, supra.

Coming now to our view that in the instant case the District Court further erred in not abstaining from acting on Singer's habeas corpus application because he had failed to exhaust the post-conviction remedy available to him in the the Pennsylvania courts under the doctrine of Case v. State of Nebraska, supra:

■ It was settled in Case v. State of Nebraska, supra, that where a state has a post-conviction statute providing for consideration of petitions alleging denial of federal constitutional rights that the state courts should be afforded an opportunity to act with respect to the alleged denial.

■ It is further settled that a federal court will not assume that a state court will construe a state post-conviction statute "so as to make it inadequate and ineffective". Bratt v. Crouse, 346 F.2d 146 (10 Cir. 1965), cert. den. 382 U.S. 932, 86 S.Ct. 324, 15 L.Ed. 2d 343.

■ The Pennsylvania Post Conviction Hearing Act, 19 P.S. § 1180–2 provides in relevant part as follows:

"This act establishes a post-conviction procedure for providing relief from convictions obtained and sentences imposed without due process of law".

The Pennsylvania statute became effective March 1, 1966, and the remedy which it provided was available to Singer when he filed his habeas corpus petition in the District Court on March 25, 1966. As earlier noted, the District Court's Order granting Singer's writ was entered October 27, 1966. The District Court in its opinion at 260 F. Supp. 91 did not consider the availability to Singer of the Pennsylvania post-conviction statute as it was required to do, under Case v. State of Nebraska, supra.

■ Whether "available" state remedies have been "exhausted" is a threshold question in every case in which a state prisoner seeks federal habeas corpus relief. United States ex rel. Romano v. Fay, 360 F.2d 389, 393 (2 Cir. 1966), cert. den. Romano v. Follette, 385 U.S. 1020, 87 S.Ct. 725, 17 L.Ed.2d 557 (1967).

■ This Court has specifically held that "It is incumbent on federal courts to ascertain whether states afford an available remedy which has not yet been exhausted to correct an abuse of due process in the administration of their criminal laws". United States ex rel. Wilkins v. Banmiller, 325 F.2d 514, 519 (3 Cir. 1963), cert. den. 379 U.S. 847, 85 S.Ct. 87, 13 L.Ed.2d 51 (1964).[8]

For the reason stated the Order of the District Court will be vacated and the cause remanded with directions to proceed in accordance with this opinion.

Rehearing denied; FREEDMAN and SEITZ, Circuit Judges, dissenting.

---

8. The rationale of the doctrine of the exhaustion of state remedies was spelled out as follows in Fay v. Noia (1963), 372 U.S. 391 at pages 419–420, 83 S.Ct. 822 at page 838, 9 L.Ed.2d 837; "'* * * it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation * * *.' Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761."