UNITED STATES ex rel. Edwin
WALKER

v.

James F. MARONEY, Supt.

Misc. No. 3829.

United States District Court,
E. D. Pennsylvania.

May 22, 1970.

Jon P. Axelrod, Asst. Public Defender,
and with him Melvin Dildine, Chief of
Appeals Div. and Vincent J. Ziccardi,
Philadelphia, Pa., for petitioner.

Arlen Specter, Dist. Atty. of Philadel-
phia County by Joseph J. Musto, Asst.
Dist. Atty., for respondent.

## OPINION

HIGGINBOTHAM, District Judge.

### I.

### INTRODUCTION

Over a decade ago, when relator was an adolescent of fifteen years of age, he and two other youthful companions confessed to the murder and attempted robbery of a Philadelphia druggist. The collateral proceedings seeking to invalidate relator's and his co-defendants' subsequent convictions of first degree murder, of which the present petition for a writ of habeas corpus is only one of many, may well last several more years. The events and circumstances surrounding the confessions and convictions of relator and his co-defendants raise perplexing legal and factual issues which have been presented to various state and federal judges over a period of time.[1]

After a plea of guilty to murder generally and a trial to determine the degree of guilt, relator was sentenced to a term of life imprisonment on September 9, 1957.[2]

The instant petition for a writ of habeas corpus was filed in this Court on March 5, 1968, and was dismissed for failure to exhaust state remedies under the Post Conviction Hearing Act, 19 P.S. § 1180–1 et seq. on the basis of United States ex rel. Singer v. Meyers, 384 F.2d 279 (3rd Cir., 1967) reversed per curiam 392 U.S. 647, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968). The Third Circuit had held in *Singer* that a state prisoner who had already filed a state habeas corpus petition, must file a petition under the then newly enacted and broader Post Conviction Hearing Act, supra, before he could be held to have exhausted his state remedies. The Supreme Court reversed this opinion without a written opinion.

Following the reversal of *Singer*, the Commonwealth requested that the instant matter be remanded to this Court for disposition.

The relator urges four essential grounds as a basis for habeas corpus relief. Firstly, the relator contends that his unrecorded guilty plea was invalid per se. Secondly, he alleges that his guilty plea was in fact involuntary, be-

---

**1.**
Relator Walker filed a petition for a writ of habeas corpus in the State Courts in June, 1965 which was denied. The Supreme Court of Pennsylvania affirmed the denial by the lower Court in its opinion in Commonwealth ex rel. Walker v. Myers, 422 Pa. 300, 220 A.2d 812 (1966). The history of relator's proceedings in federal court has already involved one appeal, *infra*, p. 3.

One of relator's co-defendants, Isaiah James Green, Jr., filed a petition for a writ of habeas corpus in the State Courts in 1965. The Supreme Court of Pennsylvania affirmed the denial of relief in Commonwealth ex rel. Green v. Myers, 422 Pa. 294, 220 A.2d 789 (1966). I dismissed Green's federal petition for a writ of habeas corpus on March 29, 1968 for failure to exhaust his state remedies under the doctrine of United States ex rel. Singer v. Myers, 384 F.2d 279 (3rd Cir., 1967), reversed 392 U.S. 647, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968). See p. 2, infra. Following the dismissal of his federal petition for a writ of habeas corpus, Green filed a petition for Post Conviction Relief in the state Courts. From the denial of relief, Green has presently pend-

ing an appeal in the Supreme Court of Pennsylvania, No. 481, January Term, 1969.

The relator's other co-defendant, James Crowson, has had an equally long and complicated career of collateral litigation. After the denial of state habeas corpus by Judge Gold in 1965, Crowson's federal petition for a writ of habeas corpus came before Judge Body of this Court. Judge Body ordered the state court to hold a hearing on whether Crowson had been properly certified to stand trial as an adult at his original trial in 1957. After Judge Jamieson of the state courts had held Crowson had been properly certified to stand trial for murder as an adult, Judge Body ordered a plenary hearing and denied the request for habeas corpus relief. United States ex rel. Crowson v. Brierley, 300 F.Supp. 1175 (E.D. Pa., October 17, 1968). The Court of Appeals for the Third Circuit affirmed this denial in a per curiam opinion. United States ex rel. James Crowson v. Brierley, 411 F.2d 910 (June 5, 1969).

**2.** Bill of Indictment No. 1434, July Sessions, 1957, Court of Quarter Sessions of Philadelphia County.

cause of relator's youth, and the unfamiliarity of his court appointed counsel with the relevant portions of the law of homicide. Thirdly, relator urges that his plea of guilty was the result of a coerced confession. And lastly, relator alleges that he was denied his right to counsel at the hearing before the juvenile court to certify him for trial as an adult. In its Answer, but not in its brief, the Commonwealth raised the issue that the relator has still failed to exhaust his state remedies.

I find that I have jurisdiction under the facts of this case. After a full plenary hearing and considerations of the well argued briefs of both the Commonwealth and counsel for the relator, I find for reasons stated hereafter, that relator is not entitled to the writ of habeas corpus and the petition is therefore dismissed.

## II.

## FACTS

After the arrest of relator's co-defendant, Isaiah Green, at 12:15 A.M., on July 27, 1957, relator, Edwin Walker, was arrested at 3:00 A.M., on July 27, 1957 (N.T., 52).[3] At the time of his arrest, Walker was fifteen years, eleven months of age (N.T., 148). He was awakened from a deep sleep at 3:00 A.M. by twelve or fourteen law enforcement officers and questioned as to the whereabouts of the alleged murder weapon. (H.C., 53).[4] The relator first lead the officers to a sewer where the weapon was supposedly hidden. During the course of the search for the weapon in the sewer, according to Walker's testimony, one officer told him that he should throw him down the sewer, but another officer assured the relator that no such threat would be carried out. (H.C., 54–55). Under the facts of this case, I find the relator was not apprehensive of any physical harm at this time. Relator

then showed the police officers where the weapon was actually hidden, in a backyard. Newspaper reporters and photographers accompanied the police during the search for the weapon. At the direction of a police officer, relator was photographed by newspaper photographers indicating where the weapon was hidden. (H.C., 56).

Later that morning the relator was interrogated at police headquarters by several police officers. After 3:45 A.M., Walker was taken to City Hall, where he was questioned by five detectives. Walker signed the typewritten confession at 8:35 A.M., in the presence of his two co-defendants. (N.T., 140). Thus, for a period of approximately five hours during the middle of the night, Walker was questioned by five policemen.

During this period of questioning of Walker, no attorney or friendly adult was present. (H.C., 60). On Thursday, July 25, 1957, prior to relator's arrest, a police officer informed relator's older sister that relator was wanted for questioning. (H.C., 38). After relator's arrest and after he had given his confession, his sister was told on either Monday or Tuesday that there was no need to get a lawyer since the relator would be treated as a juvenile. (H.C., 40).

Four days after his arrest, during which time he had no family visitors, the relator had a hearing before a juvenile judge sitting as a committing magistrate, on July 30, 1957. A prima facie case of murder was made out and relator was certified to stand trial as an adult for murder. The next day, July 31, 1957, relator was indicted for murder by the Grand Jury and sent to County Prison. He was not allowed to be visited by his sister at County Prison, although she attempted to do so. (H.C., 41). Counsel was not appointed for the relator until twelve days later, August 12, 1957. Relator first conferred with appointed counsel on August 20, 1957. (H.C., 69).

---

3. "N. T." refers to Notes of Testimony taken at the original trial to determine the degree of guilt beginning on September 4, 1957.

4. "H. C." refers to the Notes of Testimony taken at the federal habeas corpus hearing on April 10 and 11, 1969.

During this conference between the relator and court appointed counsel, counsel advised the relator to plead guilty since there was testimony identifying him as a participant in the crime; but the confession was a primary factor in counsel's advice to the relator that he plead guilty. (H.C., 17–18).

The next contact between relator and his court-appointed attorneys was on September 4, 1957, when relator plead guilty to murder generally. (H.C., 103). This plea of guilty was unrecorded. (N.T., 45.) The relator was sentenced to a term of life imprisonment on September 5, 1957.

### III.

### EXHAUSTION OF STATE REMEDIES

The Commonwealth has in its answer urged that the filing of a petition under the Post Conviction Hearing Act, supra, by the relator after he had filed the instant federal petition means the relator has failed to exhaust his state remedies. The Commonwealth relied upon United States ex rel. Davis v. Maroney, 400 F.2d 85, (1968), where the Court stated:

> "It should be noted that, after the application for Federal habeas corpus, further collateral proceedings were initiated in the state trial court under the Post-Conviction Hearing Act. This statutory procedure became effective in Pennsylvania after the original State habeas corpus petition  *  *  * [Citations omitted]; and the petitioner has not exhausted his remedies thereunder."

But recognizing that the exhaustion of state remedies doctrine is a matter of comity between state and federal courts and not a matter of jurisdictional power of the federal district courts, Fay v. Noia, 372 U.S. 391, 420, 83 S.Ct. 839, 9 L.Ed.2d 837 (1963), I used my discretion to accept jurisdiction and ordered a hearing in this matter. In a situation where the Commonwealth *has requested a remand of a case* from the Court of Appeals to this Court for further proceedings where the sole issue on appeal was whether the petitioner had exhausted his state remedies, it would appear unfair to force the petitioner to endure further delays while the courts refine the intricacies of the exhaustion doctrine. "For it is clear that there are sharp limits to the sacrifices men must make upon the altar of comity.  *  *  * " United States ex rel. Lusterino v. Dros, 260 F.Supp. 13, 16 (S.D.N.Y., 1966.) I have thus accepted jurisdiction in this case, where a certificate of probable cause for appeal will be granted so that relator may pursue his substantive constitutional claims upon appeal if he so desires.

### IV.

### THE CONFESSION

For me, the most troublesome issue in this case is whether under "all of the attendant circumstances" relator's confession "was obtained by coercion or improper inducement" and thus became an involuntary confession. Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

Appellant's confession was obtained and his guilty plea entered prior to the time of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and thus he does not have the benefit of those greater prohibitions against police interrogation since these latter cases have been held to be not retroactive. Johnson v. State of New Jersey, 384 U.S. 719, 731, 86 S.Ct. 1772, 1780, 16 L.Ed.2d 882 (1966). In one of the major pre-*Miranda* decisions, Chief Justice Warren has noted:

> "In all such cases [pertaining to the voluntariness or involuntariness of a confession], we are forced to resolve conflict between two fundamental interests of society; its interest in prompt and efficient law enforcement, and its interest in preventing the rights of its individual members from being abridged by unconstitutional

methods of law enforcement." Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 1203, 3 L.Ed.2d 1265 (1959).

Mr. Justice Frankfurter has reminded us that in making the determination between voluntary and involuntary confessions we must look to the "test in Anglo-American Courts for 200 years":

" * * * Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961).

Justice Frankfurter further noted that:

"In light of our past opinions and in light of the wide divergence of use which men may reasonably maintain concerning the propriety of various police investigative procedures not involving the employment of obvious brutality, this much seems certain: It is impossible for this Court, in enforcing the Fourteenth Amendment, to attempt precisely to delimit, or to surround with specific, all inclusive restrictions, the power of interrogation allowed to state law enforcement officers in obtaining confessions. *No single litmus-paper test* for constitutionally impermissible interrogation *has been evolved*: neither extensive cross questioning—deprecated by the English Judges; nor undue delay in arraignment—proscribed by McNabb; nor failure to caution a prisoner—enjoined by the Judges' Rules; nor refusal to permit communication with friends and legal counsel at stages of the proceeding when the prisoner is still only a suspect—prohibited by several state statutes. * * * Each of these factors, in company with *all of the surrounding circumstances* * * is relevant." 367 U.S. 601–602, 81 S. Ct. 1878–1879. (Emphasis added.)

Thus, obviously, as a matter of logic, as differentiated from constitutional nomenclature, it could be argued that under the circumstances of this case, Walker's confession was not voluntary—since he certainly would not have volunteered this information if the police had not originally questioned him; his attitude after this brutal shooting does not appear to be that of the individual described by Mr. Justice Frankfurter's language, where the "police may be midwife to a declaration naturally born of remorse, or relief." 367 U.S. 576, 81 S.Ct. 1864.

In Spano v. People of the State of New York, 360 U.S. 315, 321, 79 S.Ct. 1202, 1206, 3 L.Ed.2d 1265 (1959), the Court noted:

"The facts of no case recently in this Court have quite approached the brutal beatings in Brown v. State of Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, or the 36 consecutive hours of questioning present in Ashcraft v. State of Tennessee, 1944, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192. But as law enforcement officers become more responsible, and the methods used to extract confessions more sophisticated, our duty to enforce federal constitutional protections does not cease. *It only becomes more difficult because of the more delicate judgments to be made.*" (Emphasis added.)

Indeed, the instant case is one where my task is "more difficult because of the more delicate judgments to be made." For I could imagine very few cases where the totality of facts would be as close to that magical line of factual demarcation which separates voluntariness from involuntariness. The relator's case is in an intriguing twilight zone where from one perspective some light is shed on this problem by the decisions of the *United States Supreme Court in Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), and *Gallegos v. State of Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), and from a different perspective some light is shed by

the opinion of my distinguished colleague, Judge Ralph Body, who was affirmed by a unanimous Court of Appeals on the holding that the relator's accomplice, James Crowson's statement was constitutionally a "voluntary confession." United States ex rel. Crowson, 300 F.Supp. 1175, (E.D.Pa., 1968) affirmed 411 F.2d 910.

In Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302 (1948), the Supreme Court through Justice Douglas, held that the confession of a 15 year old youth interrogated for five hours during the middle of the night was an involuntary confession. Although there was no evidence of actual physical coercion to the youthful defendant, Justice Douglas relied upon the delay in arraignment and confinement without contact with parents or counsel as a basis for the determination that the confession was involuntary.[5]

In Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209 (1962), speaking once again through Justice Douglas, the Supreme Court held that the confession of a 14 year old suspect was involuntary where there was no evidence of prolonged questioning and where, in fact, he "after being picked up by the police * * * immediately admitted the assault and robbery." However, he did not sign the confession which provided "the crucial evidence introduced at the trial * * * [until] he had been held for five days during which time he saw no lawyer, parent or other friendly adult." [6] Certainly Gallegos, supra, and particularly Haley, supra, contain some formidable inferences suggesting that

the instant confession of Walker may be beyond, though barely beyond, the permissible borderline of police questioning, and thus under the totality of circumstances reached the point of constitutional involuntariness.

Balanced against Gallegos and Haley, is the opinion in United States ex rel. Crowson v. Brierley, supra. I cannot find any overriding factual distinctions between Crowson's experiences and those of relator which require a different constitutional result in Walker's case. If Crowson's confession was voluntary, so was Walker's. For within less than an hour Walker had shown the police where the murder weapon—a sawed-off shotgun—had been hidden. Walker was 15 years old and Crowson was 15 years old. They were both questioned in the early morning hours. Walker was visited by the police at approximately 3:00 A.M., after which time the questioning began, and Judge Body has found that Crowson was "picked up" at 2:20 A.M., and within an hour, the 15 year old Crowson had given his oral confession. This confession was given at some time between 3:15 A.M. and 4:00 A.M., and Judge Body has found:

"At about 4:00 A.M., Green began giving answers for a written statement in the presence of the relator Crowson. Sometime later Edwin Walker, a co-defendant, was brought in. Green finished his written confession at about 5:00 A.M. The questions and answers were typewritten by the police. The police began relator's confession about 6:00 A.M. Walker's confession was

---

5. "The age of petitioner, the hours when he was grilled, the duration of his quizzing [(5) five hours], the fact that he had no friend or counsel to advise him, the callous attitude of the police towards his rights combine to convince us that this was a confession wrung from a child by means which the law should not sanction. 332 U.S. 600–601, 68 S.Ct. 304.

6. " * * * the youth of the petitioner, the long detention, the failure to send

for his parents, the failure to bring him before the Juvenile Court, the failure to see to it that he had the advice of a lawyer or a friend—all these combine to make us conclude that the formal confession on which this conviction may have rested (see: Payne v. Arkansas, 356 U.S. 560, 568, 78 S.Ct. 844, 850, 2 L.Ed.2d 975) was obtained in violation of due process." 370 U.S. 55, 82 S.Ct. 1213.

written after relator's [Crowson]. At about 8:00 A.M. each defendant signed all three typewritten confessions which had been given in each other's presence and which were consistent in all important particulars." 300 F. Supp. 1176–1177.

The only significant factual difference between Crowson and Walker is that Crowson's family had notice of the questioning since he was picked up at his home around 2:20 A.M. Saturday morning, and Walker's family had no notice of his police interrogation. But under the totality of circumstances, I do not find that this factual difference of actual notice to the parents in the Crowson case and no notice to an adult in Walker's case, constitute an adequate basis to warrant a different result wherein Walker's confession could be held to be constitutionally involuntary.

Judge Body dealt in detail with the leading cases of *Gallegos, supra,* and *Haley, supra.* The Court of Appeals noted that it had given "careful consideration of the record" and it affirmed the Order of the District Court "for the reasons so well stated by Judge Body in his Opinion of October 17, 1968." 411 F.2d 911.

█ Though Justice Frankfurter suggested in Culombe v. Connecticut, *supra,* that there was no "litmus paper test" to differentiate involuntariness from voluntariness, the instant case may be an exception. For I have been presented with a unique litmus paper test performed by the Court of Appeals in their affirmance of Judge Body's opinion. This appellate test was performed on basically the same batch of facts which also immersed Walker and from which the determination of voluntariness or involuntariness was made. Since I can find no facts to significantly differentiate Walker's case from that of his fellow accomplices, I find as a matter of law that his confession was constitutionally a voluntary statement.

## V.

## VOLUNTARINESS OF THE GUILTY PLEA

█ Since the confession was in fact voluntary, it did not induce relator's guilty plea. Relator, nonetheless, maintains that the unrecorded plea was in fact involuntarily and unintelligently entered. To prove this contention relator relies primarily on an alleged misunderstanding of the law of homicide on the part of court appointed counsel, and thus presumably the fifteen year old relator was not fully advised of the consequences of his plea of guilty. The burden of proof is on the Commonwealth since the plea was unrecorded. United States ex rel. Fink v. Rundle, 414 F.2d 542 (3rd Cir., 1969). But the Commonwealth has sustained its burden of proving the plea was in fact intelligently and voluntarily entered.

Counsel for relator made the following statement, at the beginning of the trial to determine the degree of guilt:

"MR. KANNUER: May it please the Court, on behalf of Walker, we are at this time ready to plead and enter a plea of guilty, generally to murder. *And under the statutes, as I understand it, at this stage it is presumed to be second degree. The burden is on the Commonwealth to raise it to first, and the burden would be upon the defendants to reduce it to manslaughter."* (N.T., 4).

Relator contends that the above statement is inaccurate. It is his theory that when a homicide occurs during the course of an attempted robbery, the crime would necessarily be first degree murder under the Statute (18 Pa.Purdon's, § 4701.) Furthermore, he maintains there could have been no second degree or manslaughter conviction under the statutory classification of various degrees of murder.

█ Relator's theory is not in accordance with the interpretation of the law

of homicide in Pennsylvania where the defendant has pleaded guilty to murder generally. It is impossible to plead guilty to murder in the first degree in Pennsylvania. The presumption upon a guilty plea to murder generally is that the degree of murder is no higher than second degree. Commonwealth v. Jones, 355 Pa. 522, 50 A.2d 317, 319 (1947). The Commonwealth would thus have to come forward with evidence to make out a case of first degree murder. To find the relator guilty of second degree murder or manslaughter would not have been a "legal impossibility" as relator contends, but only against the weight of all the evidence developed since the attempted robbery was established at trial.

■ When I balance the relator's age and capacity against the level of legal assistance granted, as relator suggests, I find that relator understood the nature of his guilty plea. Thus the testimony at the hearing before me shows that court appointed counsel, Mr. Kanner, discussed fully with relator the charges against him and the possible penalties. (H.C., 16, 17). The fact of identification and a confession weighed heavily in the decision (H.C., 24). And finally relator's plea was motivated by a desire to escape the death penalty, despite the fact he testified he was not aware he was admitting the charges against him. (H.C., 71.)

■ Nor is the unrecorded guilty plea invalid per se under the rule of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) which held that a guilty plea was constitutionally invalid unless there is an affirmative on the record demonstration that the plea was voluntarily and knowingly entered. The Court of Appeals for the Third Circuit has already held that *Boykin* is not to be applied retroactively. United States ex rel. Hughes v. Rundle, 419 F.2d 116 (3rd Cir., 1969). Since relator's plea was entered in September, 1957, and *Boykin* was decided in June, 1969, the lack of a record demonstration of voluntariness does not invalidate the plea.

## VI.

## RIGHT TO COUNSEL AT JUVENILE CERTIFICATION HEARING

■■ Relator's final claim of constitutional deprivation is that he was denied counsel at the certification proceedings before the juvenile court is not well taken. The certification of juveniles as adults where the charge is homicide, is in the nature of a preliminary hearing in Pennsylvania. The juvenile judge acts only as a committing magistrate in deciding whether the youth should be held for the Grand Jury. Gaskins Case, 430 Pa. 298, 244 A.2d 662 (1968). A preliminary hearing in Pennsylvania is not normally a critical stage in the criminal proceedings requiring the assistance of counsel. United States ex rel. Budd v. Maroney, 398 F.2d 806 (3rd Cir., 1968). On almost identical facts involving a similar procedure for certification for juveniles charged with rape or homicide under a Tennessee statute, the Court of Appeals for the Sixth Circuit has held that the defendant is not entitled to counsel at this stage of the proceedings. Jackson v. Johnson, 364 F.2d 233 (6th Cir., 1966).

## VII.

## CONCLUSION

After hearing the evidence and considering the well argued briefs on both sides, I have denied the petition for a writ of habeas corpus. The relator has exhausted his state remedies. I have found that relator's confession, under the applicable standard, was in fact given without constitutional error. Secondly, the plea of guilty was in fact knowingly and intelligently entered. Thirdly, I have found relator was not entitled to counsel at the certification proceedings before the juvenile court.

I will grant a certificate of probable cause for appeal in this case since the issues of law appear substantial.