UNITED STATES ex rel. Eugene FITZ-
GERALD, Petitioner-Appellee,

v.

E. J. LaVALLEE, Superintendent,
Respondent-Appellant.

No. 681, Docket 72–1085.

United States Court of Appeals,
Second Circuit.

Argued May 5, 1972.

Decided May 23, 1972.

John G. Proudfit, Asst. Atty. Gen.
(Louis J. Lefkowitz, Atty. Gen. of State
of New York, Samuel A. Hirshowitz,
First Asst. Atty. Gen., of counsel), for
respondent-appellant.

Charles H. Fier, Brooklyn, N. Y., for
petitioner-appellee.

Before KAUFMAN, ANDERSON and
MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Following an evidentiary hearing the
district court granted the application of
petitioner, a state prisoner, for a writ of
habeas corpus on the ground that his
20-year old plea of guilty to an indict-
ment in the Supreme Court, Kings
County, charging him with attempted vi-
olation of § 1751 of the former Penal
Law, McKinney's Consol.Laws, c. 40 (re-
lating to possession of heroin) was in-
voluntary. Judge Weinstein found that

at the time of the plea Fitzgerald was under the influence of heroin and did not appreciate or understand the significance of his action. Petitioner has long since served the sentence imposed pursuant to his 1952 plea. Unless vacated, however, the writ will have the effect of reducing a later sentence, which Fitzgerald is now serving imposed upon him in 1969 as a second offender after he had been convicted of grand larceny. We affirm.

■ There was ample evidence before Judge Weinstein, including the testimony of petitioner and a co-defendant, John Mongiode, to the effect that at the time of his 1952 guilty plea petitioner was a heroin addict who had, three hours before he pleaded guilty, taken a "fix" of approximately one-half a level teaspoon of heroin, a dose which he usually took five or six times a day if he had the heroin. However, such use of narcotics does not *per se* render a defendant incompetent to plead. United States v. Tom, 340 F.2d 127 (2d Cir.), motion for leave to file petition for writ of habeas corpus denied, 382 U.S. 912, 86 S.Ct. 303, 15 L. Ed.2d 236 (1965); Grennett v. United States, 131 U.S.App.D.C. 202, 403 F.2d 928, 931 (1968); White v. United States, 367 F.2d 788, 790 (8th Cir. 1966); Holmes v. United States, 323 F. 2d 430, 431 (7th Cir. 1963), cert. denied, 376 U.S. 933, 84 S.Ct. 704, 11 L.Ed.2d 652 (1964). Indeed, a heavy heroin user might be more competent to appreciate the nature and consequences of his plea after taking his usual dose than if he had not taken it, particularly if failure to satisfy his habit had led to withdrawal symptoms. See e. g., Wood v. United States, 251 F.Supp. 310, 313 (W.D.Va. 1966); Sewell v. Lainson, 244 Iowa 555, 562, 57 N.W.2d 556, 559 (1953). While use of heroin is a relevant factor, the test continues to be whether the defendant has the ability to consult with counsel and a rational understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); United

States v. Sullivan, 406 F.2d 180, 185 (2d Cir. 1969).

The principal issue before Judge Weinstein, therefore, was whether Fitzgerald had satisfied his burden of proving that he did not at the time realize the significance of his guilty plea. As might have been expected in this effort to resurrect his state of mind at a time 20 years earlier, the sole evidence offered by Fitzgerald on the issue was his own testimony. He testified that while he knew at the time of the 1952 plea that he was charged with a felony, he understood that he "was pleading to go to a hospital" and that he did not realize that he "was pleading guilty to a felony or waiving my right to trial or have witnesses brought forth. I wasn't advised of any of that." Following the guilty plea and the taking of his personal history or "pedigree" by the court clerk, he was remanded not to a hospital but to the Raymond Street jail where he suffered withdrawal.

On January 15, 1953, petitioner was sentenced by the state court, but did not raise any question as to his earlier plea at that time or at any time during the 58 months served by him. His testimony before Judge Weinstein on this issue was that when he was sentenced he did "not really" know what was going on because he "didn't sleep for a period of a month" following his guilty plea.

Respondent sought to disprove the foregoing by impeachment of Fitzgerald's credibility and by testimony of petitioner and others indicating that he understood the nature and consequences of his guilty plea. At the time of the plea he was 20 years old and had attended school through the eighth grade. The record of the 1952 plea discloses that while the state judge (Justice Carmine J. Marasco) did not engage in the detailed interrogation mandated by later Supreme Court decisions, he did ask several questions, to which Fitzgerald gave answers indicating his understanding of the nature of the charge and of the essential circumstances.

In addition to Fitzgerald's obviously strong motive to testify before Judge Weinstein in a way that would benefit himself, he had a record of 23 arrests and 18 misdemeanor convictions. Two of these convictions and a few other court appearances by him on other criminal charges had occurred prior to the 1952 plea, indicating that he had had at least some practical familiarity with state criminal procedure at the time when the guilty plea was taken. It was further established that immediately following petitioner's 1952 guilty plea he was asked a series of questions by the court clerk seeking information as to his personal history or "pedigree" (e. g., age, address, occupation, schooling, mental status, religion, parents, drug addiction, etc.) in response to which he furnished accurate answers.

Upon cross-examination Fitzgerald further testified that following the initial arraignment upon the 1952 charge and prior to his plea of guilty he had consulted with his court-assigned counsel, Solon B. Hanft, in the latter's office, where he gave Hanft the essential facts with respect to the pending charge. Hanft advised him that he was charged with a felony since the quantity of heroin involved (118 grams) exceeded the limits of a misdemeanor charge (108 grams), but that Hanft felt that he "could get us a misdemeanor and get us into a hospital, so he said he will do what he can." However, aside from the fact that his attorney's mistaken belief would not provide a basis for relief, United States ex rel. LaFay v. Fritz, 455 F.2d 297 (2d Cir. 1972), the plea transcript reveals repeated references to the charge as a felony when the plea was taken and statements by the judge that although he realized that defendants (Fitzgerald and Mongiode) needed medical treatment for their addiction, he did not have the power to commit them to a hospital.

Respondent also called as witnesses Mr. Hanft and Albert V. DeMeo, the Assistant District Attorney who represented the state when petitioner's plea was taken. Hanft was a lawyer with wide experience in criminal trial practice who had appeared in numerous criminal cases and DeMeo had handled hundreds of prosecutions in the District Attorney's office. Quite understandably neither could recall Fitzgerald or his guilty plea. Hanft testified, however, that he would not have pleaded a client guilty without first being satisfied that his client knew the nature and consequences of his actions. DeMeo, now a Professor of Law, testified that from observation of drug addicts he felt capable of recognizing a man so intoxicated by reason of drugs as not to have the requisite understanding needed to plead, and that he never would have gone forward with a pleading under such circumstances.

Lastly, the district court had before it the fact that in a 1970 coram nobis proceeding before Justice Harry Gittleson of the Kings County Supreme Court, initiated by Fitzgerald in an effort to set aside his 1952 guilty plea, Fitzgerald had given similar testimony to the effect that he was "under the influence of narcotics through the whole proceeding,"[1]

---

1. "Q. And between the time the plea was taken and the sentence was imposed, did you have any funds to retain your own attorney?

A. No, can I say that I never took this plea? I never was advised that I waived a jury trial, as I was under the influence of narcotics through the whole proceeding and the record will show this.

\*     \*     \*     \*     \*

Q. But you knew at that time, did you not, that the plea—you weren't actually taking that plea. Is that what you contend?

A. I contend I was under the influence of narcotics and didn't know what was going on. I was 20 years of age and was not advised of anything.

\*     \*     \*     \*

Q. But you knew that you were sentenced as a felony, didn't you?

A. I had no knowledge of anything. I was 20 years old and I didn't know what was going on."

(Minutes of coram nobis proceeding, Jan. 26, 27, 1970, Fitzgerald testimony at pp. 17, 22, 34.)

and Hanft had testified to the procedure he had customarily followed in advising a client who was dissatisfied with the court's disposition of his case upon a plea of guilty. At this hearing Fitzgerald testified that he had served over 58 months in Elmira pursuant to the 1953 sentence and had been convicted 12 times after his release. However, he had not sought to set aside the 1952 plea or sentence until his initiation of the coram nobis proceeding in January, 1970. His belated institution of legal proceedings may have been attributed to his newly acquired knowledge of criminal procedure resulting from recent study of law books. Hanft testified that if Fitzgerald had at any time indicated dissatisfaction with his plea, he would have moved to withdraw it and if this motion were denied, he would have appealed.

Following the hearing Justice Gittleson on January 27, 1970 held that Fitzgerald had authorized Hanft to enter the guilty plea, that the plea was properly entered, and that the "claim now urged by the defendant is an afterthought," stating:

> "In making my holding, I hold that the plea as entered under the circumstances, disclosed by the minutes, was of such a nature that in reality he did take the plea, and he did authorize the proffering of the plea that was accepted and that it was taken in good faith. And Mr. Hanft, in accordance with the instructions and authority proposed same by this defendant, did offer the plea in the defendant's presence and with his consent. And the plea stands, and the plea was properly entered. And in the Court's opinion it was valid."

Justice Gittleson, however, did not make a specific finding of voluntariness except to the extent that it is implicit in his finding of validity.

Upon the foregoing record the evidence appears to us to weigh heavily against Fitzgerald's application, and we frankly state that we have difficulty in fathoming the process of appraisal that persuaded the able district judge to reach the opposite conclusion, particularly when the burden of proof was on petitioner rather than on respondent. United States ex rel. Schuster v. Herold, 410 F.2d 1071, 1085 (2d Cir.), cert. denied, 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969); Papalia v. United States, 333 F.2d 620, 621 (2d Cir.), cert. denied, 379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964); United States v. Tom, *supra*. However, there was evidence to support the finding of involuntariness, namely Fitzgerald's testimony 20 years after the event that he did not understand what he was doing, which cannot be dismissed as insubstantial. Since the credibility of Fitzgerald's testimony and the weight to be extended to it were matters to be determined by the trial judge, who observed the witnesses, we cannot say that the court's findings were clearly erroneous, doubtful as we may be as to whether any other judge would under all of the circumstances have extended much, if any, credibility or weight to it, or reached the same result. F.R.Civ.P. 52; Zovluck v. United States, 448 F.2d 339, 341 (2d Cir. 1971); United States ex rel. Carter v. LaVallee, 441 F.2d 620, 622 (2d Cir. 1971); United States ex rel. Jefferson v. Follette, 438 F.2d 320, 322 (2d Cir. 1971).

The order is affirmed.