**UNITED STATES of America ex rel. Pasquale DELLE ROSE, Petitioner-Appellee,**

v.

**J. Edwin LaVALLEE, Superintendent of Clinton Correctional Facility, Respondent-Appellant.**

**No. 113, Docket 72–1619.**

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1972.

Decided Oct. 27, 1972.

14. It appears that Brown is now in federal custody. See Brown v. Beto, 338 F.Supp. 1358, 1361, n. 4 (S.D.Tex.1971).

Allan L. Blumstein, New York City, for petitioner-appellee.

Hillel Hoffman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., and Irving Galt, Asst. Atty. Gen., of counsel), for respondent-appellant.

Before FRIENDLY, Chief Judge, and LUMBARD and FEINBERG, Circuit Judges.

FRIENDLY, Chief Judge:

We agree with the district judge that "This is a troublesome case." The State of New York asks us to reverse an order of the District Court for the Southern District of New York, 342 F.Supp. 567, directing the release of Pasquale Delle Rose, sentenced to life imprisonment in 1964 for the premeditated murder of his wife, unless he is promptly retried without use of two confessions which the district court held to be involuntary. The issue of voluntariness had been decided adversely to petitioner in an unreported decision by Justice Gellinoff in the Supreme Court of New York for Bronx County in 1968; his decision was unanimously affirmed by the Appellate Division, First Department, People v. Rose, 33 A.D.2d 657 (1969), and the Court of Appeals, 27 N.Y.2d 882, 317 N. Y.S.2d 358, 265 N.E.2d 770 (1970); and certiorari was denied, 402 U.S. 913, 91 S.Ct. 1395, 28 L.Ed.2d 656 (1971).

In Delle Rose's pre-Jackson v. Denno trial, the prosecution sought to prove and his confessions supported the following story: Delle Rose, consumed with jealousy, had determined to kill his wife and purchased a shotgun for that purpose. In the early morning of March 9, 1963, he placed the gun against the floor of the family car so that its muzzle pointed into the back of the driver's seat. Using a wire hanger and a length of cord, he then attached the gun to the driver's seat in such a manner that the triggers would be squeezed and the gun fired if the seat were pulled into a forward position. Knowing that his wife drove with the seat further forward than he did and that she was likely to use the car alone later in the morning, he awaited events. For reasons not explained, the device failed to operate, and Mrs. Delle Rose left and returned from a shopping trip without having suffered harm or having noticed the weapon. Soon after her return, the couple departed together on a joint errand, returning shortly thereafter. While his wife parked, Delle Rose reached behind her seat and activated the device manually, causing the gun to fire and kill her. The physical facts were consistent with Delle Rose's confessions.

At trial, Delle Rose denied that he had set or even knew of the device. His claim was that while looking behind to help his wife park he noticed for the first time a "brown paper bag" behind the driver's seat and inadvertently detonated the gun while exploring the "bag's" contents. Understandably unimpressed by this story, the jury chose to credit the confessions, which it presumably found to have been voluntary. An appeal having been taken, the Appellate Division remanded for an evidentiary hearing on the voluntariness of the confessions pursuant to People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N. E.2d 179 (1965), before the trial judge. Justice Gellinoff, who had seen and heard Delle Rose both at the trial and at the Huntley hearing, ruled the confessions to have been voluntary; as noted, this ruling was unanimously affirmed at both levels of the New York appellate hierarchy.

What has caused the present imbroglio is that, as the district court permissibly ruled, the state judge did not make adequate findings after the *Huntley* hearing. In the court's words, he

"reviewed the evidence, summarized petitioner's testimony, but neglected to say how far he credited—and to what extent, if any, he discounted or rejected —that testimony." Petitioner having thus established "that the merits of the factual dispute were not resolved in the State Court hearing," 28 U.S.C. § 2254(d)(1), a federal hearing was warranted and Delle Rose was relieved of the burden of establishing "by convincing evidence that the factual determination by the State court was erroneous." Choosing largely to credit the version of the circumstances of the confessions given by Delle Rose, who appeared before him, the district judge found the confessions to have been involuntary. As petitioner's counsel has strongly reminded us, these findings are now protected from full review on our part by the familiar provision of F.R.Civ.P. 52(a), applicable by virtue of F.R.Civ.P. 81(a)(2):

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

If we must uphold the factual findings, as we think the Rule compels, although on the cold record we do not feel we would have made them, compare United States ex rel. Fitzgerald v. LaVallee, 461 F.2d 601, 604 (2 Cir. 1972), we cannot fault the conclusion of involuntariness.

It is a matter of particular concern when a district court has directed release of a state prisoner convicted of serious crime because of the involuntariness of confessions [1] despite the considered and unanimous contrary view taken by thirteen New York judges who are quite as familiar as federal judges with the principles governing the admissibility of confessions and have displayed no hesitancy in applying them. Still, in abstract theory, we cannot tell in this instance whether the New York courts credited Delle Rose's story of the circumstances surrounding his confessions but still held these to have been voluntary, a conclusion to which we could not agree, or based their holding of voluntariness on a partial or complete rejection of his testimony, in which event the district judge would have been bound to deny the petition. The difficulty would have been avoided if the trial justice had made adequate findings or if one or the other of the New York appellate courts, discerning the inadequacy, had remanded for him to make specific findings with respect to credibility.

■ Our brother Lumbard suggests that the district judge should have given the New York courts a further opportunity to make credibility findings that would support the result reached in the *Huntley* hearing rather than rehear the matter himself and that, since he did not, we should now include the possibility of new *Huntley* findings by the state judge as an alternative condition of release. We might be inclined to do this but for the Supreme Court's summary reversal, 392 U.S. 647, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968), of United States ex rel. Singer v. Myers, 384 F.2d 279 (3 Cir. 1967). See also United States ex rel. Gockley v. Myers, 411 F.2d 216 (3 Cir. 1969). When the Supreme Court has approved release conditioned on a state's doing something less than a retrial or the hearing of an appeal, see Jackson v. Denno, 378 U.S. 368, 391–396, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964), but see Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), this has been in cases where the state had failed to provide procedures sufficient to guarantee constitutionally protected rights, not where the procedures were sufficient and the petitioner has pursued them but the findings were inadequate. While we join in regretting the release of the petitioner in this case, federal-state relations may be better served in the long

---

1. The State represents that without the confessions it has little chance of obtaining a conviction so many years after the event.

run by thus reminding the state courts that they have one, but only one, opportunity to make a determination that will trigger the presumption of correctness under 28 U.S.C. § 2254(d).

Despite our lack of enthusiasm for the result we are constrained to reach, we express appreciation to Allan Blumstein, Esq., for his devoted service to petitioner.

Affirmed.

LUMBARD, Circuit Judge (dissenting):

I dissent. I would remand to the district court with instructions to withhold issuance of the writ for a period of thirty days to enable Justice Gellinoff to make further and more detailed findings of fact to support his conclusion that Delle Rose's confessions were voluntary. From the language used by Justice Gellinoff, it is abundantly clear that he believed the state's witnesses on the issue of voluntariness and did not credit Delle Rose. Of course, it is true that the bare conclusion of voluntariness, without findings of fact, makes it possible that, with respect to conforming to the standards established by federal decisions, the trial judge's findings might be insufficient, or that his conclusion on the voluntariness issue might not follow from the findings. However, it seems unlikely that such an experienced and able trial judge was not fully aware of the applicable standard and that any elucidation by him would not set the matter at rest.

The state court, which had had a full hearing on the issue with ample presentation of testimony, should have been permitted to clarify its findings of fact on the relevant issue before the federal district court was put to the task of holding a second evidentiary hearing. There is some precedent for remitting a federal habeas corpus petitioner to the state courts for an evidentiary hearing to determine the facts that are relevant to his federal constitutional claims. See Hart v. Eyman, 458 F.2d 334, 338 (9th Cir. 1972); Carter v. Eyman, 265 F. Supp. 957 (D.Ariz.1967). The majori-

ty notes that in United States ex rel. Singer v. Myers 384 F.2d 279 (3rd Cir. 1967), a case in which the Third Circuit remitted the petitioner to the state courts, the Supreme Court summarily reversed. See 392 U.S. 647, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968). I do not feel, however, that this necessarily defeats the result that I would reach here. For the Court was there concerned with the exhaustion prerequisite to federal habeas corpus relief. The Third Circuit had vacated the issuance of the writ on exhaustion grounds because of the possibility that the petitioner could, pursuant to a state post-conviction statute, petition the state courts for an evidentiary hearing on the voluntariness issue. In summarily reversing, the Supreme Court cited Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). In that case, the Court had said:

> In Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), we considered the statutory requirement, under 28 U.S.C. § 2254, that a petitioner exhaust his state remedies before applying for federal habeas corpus relief. We concluded that Congress had not intended "to require repetitious applications to state courts." 344 U.S., at 499, n. 3, 73 S. Ct. 397. We declined to rule that the mere possibility of a successful application to the state courts was sufficient to bar federal relief. pp. 42–43, 88 S.Ct. p. 196.

It is clear that the Court's reversal in *Singer* is inapposite here, for no one suggests that the writ should be denied for failure to exhaust state remedies. My objection is that the district court should not have held a hearing, in light of the full hearing held before Justice Gellinoff, until Justice Gellinoff had had an opportunity to clarify the doubts that petitioner has raised about the findings that were made in the state hearing. Before the district court held a second evidentiary hearing, it had to determine "that the merits of the factual dispute were not resolved in the State court hearing," 28 U.S.C. § 2254(d)(1), Town-

send v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); for, otherwise, the state court findings were entitled to a presumption of correctness and the burden was on the petitioner to establish by convincing evidence that they were erroneous. 28 U.S.C. § 2254(d). It is my view that when the state court record is, at most, unclear, as it is here, the district court should permit the state court to clarify its findings before it determines whether the material facts were resolved in the state court hearing and proceeds with a new evidentiary hearing. This has nothing to do with the exhaustion requirement, which I concede to be met here, that concerned the Supreme Court in *Singer* and *Roberts*.

I believe that the federal courts should make every effort and provide every opportunity to allow the state courts to tie up the ribbons and amend and clarify their rulings so that their judgments may stand. As I have indicated, nothing in this approach seems to me to be inconsistent with the requirements of 28 U.S.C. § 2254(d). If the state courts, after having an opportunity to clarify their findings, fail to do so within a reasonable time, then it may be proper for the federal district court to proceed with a new evidentiary hearing. Until the state courts have had this opportunity, however, the district court should not proceed with a new hearing on the issue.

My view of the proper resolution of this case is reinforced by the Supreme Court's language in Townsend v. Sain, *supra,* which was the precursor of revised § 2254. Chief Justice Warren, speaking for the Court, said:

> We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing;
>
> .    .    .    .    .    .
>
> If the state court has decided the merits of the claim but has made no express findings, it may still be possible for the District Court to reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia. In some cases this will be impossible, and the Federal District Court will be compelled to hold a hearing.
>
> Reconstruction is not possible if it is unclear whether the state finder applied correct constitutional standards in disposing of the claim. Under such circumstances the District Court cannot ascertain whether the state court found the law or the facts adversely to the petitioner's contentions. Since the decision of the state trier of fact may rest upon an error of law rather than an adverse determination of the facts, a hearing is compelled to ascertain the facts. Of course, the possibility of legal error may be eliminated in many situations if the fact finder has articulated the constitutional standards which he has applied. Furthermore, the coequal responsibilities of state and federal judges in the administration of federal constitutional law are such that we think the district judge may, in the ordinary case 'in which there has been no articulation, properly assume that the state trier of fact applied correct standards of federal law to the facts, in the absence of evidence  .  .  . that there is reason to suspect that an incorrect standard was in fact applied. Thus, if third-degree methods of obtaining a confession are alleged and the state court refused to exclude the confession from evidence, the district judge may assume that the state trier found the facts against the petitioner, the law being, of course, that third-degree methods necessarily produce a coerced confession. pp. 313–315, 83 S.Ct. pp. 757, 758.

This language indicates to me that we might even be justified in holding, without the need for any clarification from the state court, that it was improper for the district judge to hold an evidentiary hearing. In any event, it indicates that

the district court was in error in ignoring the prior hearing and determination by Justice Gellinoff on the voluntariness issue.

Here again, as in many hundreds of cases since Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), a federal district court is second-guessing numerous state court judges, who, as the majority concedes, are as familiar as federal judges with the standards governing the admissibility of confessions and have shown no unwillingness to apply them, and all of whom are agreed that the confessions were voluntary and the conviction was properly arrived at. As in many hundreds of cases since Fay v. Noia, federal court intervention threatens to free a man who, beyond any doubt, was guilty of the deliberate murder of his wife. It seems to me that a decent respect for the public interest, as well as for the state courts, requires us to stay our hand when, at most, the record seems equivocal.