ARTHUR DUARTE et al., Plaintiffs and Respondents, v. J. B. RIVERS et al., Defendants and Respondents; PERSIAN DITCH COMPANY et al., Appellants.

Adolph Feierbach and Hadsell, Sweet & Ingalls for Appellants.

Maddox & Abercrombie for Defendants and Respondents.

BARNARD, P. J.—This is an appeal from an order denying a motion for a new trial made under section 953e of the Code of Civil Procedure. The action involved the right to use certain channels and ditches, and the manner of handling certain excess flows of water. There were several groups of parties with conflicting interests. The judgment enjoined

the Persian Ditch Company and certain individuals from taking water from Mill Creek in excess of a given amount, and required them to control the flow of water into their ditch accordingly.

The trial of the action lasted five days and was concluded on February 6, 1946. After a considerable delay, in the filing of briefs and otherwise, findings and judgment were entered on November 8, 1946. A motion for a new trial was denied on December 24, 1946. Notice of appeal by the Persian Ditch Company and certain individuals was filed on January 22, 1947, and a request for a transcript was filed on January 28, 1947. On September 6, 1947, the appellants moved for a new trial under section 953e, on the ground that it was impossible to obtain a reporter's transcript because of the disability of the reporter and because of the loss or destruction, in substantial part, of his notes. This motion was heard on October 17, 1947, and denied on October 21, 1947. From that order this appeal was taken.

The facts, as disclosed at the hearing, show a long and unsuccessful attempt to get the reporter to transcribe his notes during the period between the conclusion of the trial and the denial of the first motion for a new trial on December 24, 1946, and during another long period from that date to October 17, 1947, when the motion under section 953e was heard. The appellants' counsel had ordered a transcript during the trial and after the conclusion of the trial they pressed the reporter to write up the testimony, which they desired to use in writing their briefs. Up to March 9, 1946, when the reporter ceased to work, he had transcribed the testimony of four witnesses and about half the testimony of three other witnesses. The testimony of some 14 other witnesses was never transcribed.

About March 13, 1946, counsel for appellants learned that the reporter had been sent to jail for being drunk and disorderly, and that he had formerly, before coming to Visalia, been addicted to overindulgence in intoxicants. The reporter was again sent to jail on March 21. Counsel saw the reporter 15 to 20 times between March 21 and April 22, and on practically every occasion he was drunk, incoherent, emotionally upset and unable to perform any work. On April 22, he was sent to the Stockton State Hospital. He was released for one week on May 25, in order to work on another transcript but failed to do this and instead of returning to the hospital wandered over California and in Oregon until December,

1946. On December 23, 1946, he was sent to jail in San Francisco where he remained until February 2, 1947. From March 9, 1946, until October 10, 1947, the reporter was often confined in hospitals and jails. At many times during this period he was importuned by counsel for the appellants to prepare this transcript, but was unable physically and mentally to do so. For many weeks before December 23, 1946, counsel did not know where the reporter was. Having learned that he was in jail they wrote him on January 24, 1947, asking where his notes were and if any other reporter could read them. He replied stating that he would call on counsel when he was released and then go to Sacramento and Visalia to get out the transcript.

On his release from jail on February 2, 1947, the reporter called on one of appellants' counsel and told him that part of his notes were in Visalia and part in Sacramento, and promised to get in touch with counsel in a few days to see about work on this transcript. Counsel next heard from the reporter on March 21, 1947, when they received a letter from him saying he was confined in jail in Oakland and that he had been sentenced to 90 days for drunkenness on February 7. Counsel visited the reporter in jail on March 24 and tried to find out when he would be released, and to make arrangements to have him prepare the transcript. On May 8, 1947, the reporter was released, and called on counsel and agreed to go to Sacramento to get one notebook which he had left there and then go to Visalia and prepare the transcript. A few days later counsel was advised that the reporter had not come to Visalia. On May 21, counsel received a letter from the reporter saying he was again in the Stockton hospital. Counsel wrote to the reporter asking him if he could do the work while in the hospital. On June 10, the reporter replied that he could do so if he could get the notebooks, and that he was trying to find the one at Sacramento which was missing. On June 25, counsel learned that the reporter had left the Stockton hospital. On July 24, counsel next heard from the reporter when he appeared at his office and told him that the notebook which had been left at Sacramento could not be found. When he left, counsel asked the reporter to keep in touch with him but heard nothing more from him until September 11, 1947. This counsel stated in his affidavit that for eight or nine months prior to September 11, 1947, this reporter "when free from jail has constantly gone into protracted drinking sprees which have reduced him to a badly

besotted, nervously-wrecked condition and have made him incapable of transcribing his notes on said trial of this case; that affiant has seen him at affiant's office on several occasions in that condition.''

It fully appeared at the hearing that from March 9, 1946, to October, 1947, this reporter was confined in hospitals and jails some half-dozen times and was in no mental or physical condition to transcribe his notes. It also appeared that other reporters could not read these notes and that one of the notebooks which had been left at Sacramento could not be found and was probably destroyed. It also appeared that respondents' main counsel at the trial had retired from practice and was no longer available to them. At the oral argument in this court it was stated that one of respondents' main witnesses had died since the conclusion of the trial.

It is well settled that an order denying a new trial under section 953e will not be reversed except for an abuse of discretion, that in resolving the merits of such a motion the trial court must consider the rights of both the appellants and the respondent, and that diligence on the part of one seeking such relief is required. (*Fickett* v. *Rauch*, 31 Cal.2d 110 [187 P.2d 402], and cases there cited.) In the dissenting opinion in *Caminetti* v. *Edward Brown & Sons*, 23 Cal.2d 511 [144 P.2d 570], it is suggested that any injury to the respondents caused by the delay should be considered in connection with the matter of diligence. Under all of the decisions it appears that there must be a showing, in such cases, of the disability of the reporter or the impossibility of securing a transcript, of the presence of substantial issues showing the necessity for one, and of reasonable diligence. Of necessity, each case must be decided upon its own facts.

The respondents argue that no attempt was here made to secure a settled statement or other record in lieu of a reporter's transcript. The appellants have made a rather strong showing that sufficient data was not available to them for this purpose and that any attempt in that direction would have been useless. While we are inclined to agree with them, this was primarily a question of fact for the trial court.

There was an ample showing that substantial issues were involved, and that some record of the testimony was necessary for a proper presentation of the appeal from the judgment. There was also a very complete showing of long continued efforts on the part of appellants' counsel, extending over a period of 20 months, to get this reporter to transcribe his

notes. While diligence in this respect fully appears, a question remains as to whether the appellants were justified in relying on the hope of their eventual success in this regard, under the circumstances, and whether the known situation did not call for more prompt action in seeking this relief.

The first motion for a new trial was denied 11 months after the conclusion of the trial, and an appeal was taken a month later. However, the disability of the reporter was discovered about 10 months before the appeal was taken. The proceeding here in question was not started until eight months after the appeal was taken, nine months after the first motion for a new trial was denied, and 19 months after the disability of the reporter was discovered. The condition of the reporter was well known at the time of the first motion for a new trial, it had then extended over a period of nine months, and the appellants had failed after very strenuous efforts to secure a transcript which they greatly desired for use both in writing their briefs and in moving for a new trial. They continued to delay in asking for this relief for another nine months, although they discovered almost immediately that the reporter was again in jail and that his condition had not improved. There was a total delay of about 20 months after the trial, during which the position of the respondents had materially changed to their detriment. Under these circumstances, where the disability of the reporter was known to the appellants shortly after the trial ended and long before the appeal was taken, where the situation was unchanged and apparently hopeless at the time the appeal was taken and formal request for a transcript made, and where another delay of eight months in seeking relief then ensued, it cannot be held as a matter of law that there was the necessary diligence or prompt action on the part of the appellants, or that the trial court abused its discretion in denying this relief. While it would seem that a new trial should have been granted for this reason, had it been more promptly applied for, the trial court's conclusion under the existing facts cannot be disturbed on appeal.

The order appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied March 3, 1949, and appellants' petition for a hearing by the Supreme Court was denied April 14, 1949. Carter, J., and Schauer, J., voted for a hearing.