Adolph CARDEN

v.

C. Murray HENDERSON, Warden, Tennessee State Penitentiary.

Civ. A. No. 4965.

United States District Court
E. D. Tennessee, S. D.

Aug. 8, 1967.

Robert J. Shockey, Chattanooga, Tenn., for petitioner.

Robert H. Dedman, Nashville, Tenn., for respondent.

## MEMORANDUM

FRANK W. WILSON, District Judge.

This is a proceeding upon a petition for a writ of habeas corpus under the provisions of Title 28, Chapter 153, United States Code (28 U.S.C. § 2241 et seq.). The petitioner is in the custody of respondent pursuant to sentence of the Criminal Court of Hamilton County, Tennessee. The main thrust of petitioner's contentions is concerned with lack of a transcript of his state court trial and the lack of appellate review of the trial. Pursuant to the previous order of the Court, the respondent has answered the petition. Respondent filed as exhibits to his response parts of the technical record of petitioner's criminal proceedings and his state habeas corpus proceedings, a transcript of the evidentiary hearing held in the state habeas corpus proceeding, and a copy of the opinion of the Tennessee Supreme Court upon appeal of the habeas corpus proceeding. As a result, this case is in a posture for disposition.

This case presents important questions of constitutional law. If petitioner is entitled to the relief sought, he must be released or re-tried after a lapse of some 15 years from his original conviction. If petitioner is not entitled to relief, he may be required to spend the remainder of his life in prison.

The following facts appear to be undisputed upon the present state of the record. Petitioner was indicted by a grand jury of Hamilton County, Tennessee, in the spring of 1952 for the offense of murder in the first degree. Though petitioner himself was indigent, he was

represented by Edward E. Davis, who had been retained and compensated by petitioner's parents. At that time, Mr. Davis was a private practitioner of law, and since 1958 has served as the District Attorney General for Hamilton County.

Petitioner was put to trial upon the indictment upon July 7, 1952, was convicted, and was thereafter sentenced to 99 years in the state penitentiary, which sentence petitioner is now serving. A motion for new trial was denied upon October 13, 1952. Petitioner, through counsel, excepted to this ruling and prayed an appeal to the Tennessee Supreme Court. He was allowed thirty days to prepare a bill of exceptions. Upon November 29, 1952, notice was put down in the trial court for petitioner and counsel to show cause within five days why the appeal should not be dismissed for failure to file a bill of exceptions. Petitioner denies receiving a copy thereof. On December 8, 1952, an order was entered dismissing petitioner's appeal. At all times after his conviction, petitioner was in the custody of the State, no bail having been set.

Upon February 16, 1966, petitioner filed a petition for a writ of habeas corpus in the Criminal Court of Davidson County, Tennessee, which was transferred to the Criminal Court of Hamilton County. The contentions advanced in that petition are similar to those advanced in the instant petition. An evidentiary hearing was held upon April 25, 1966. Upon July 11, 1966, it was adjudged that petitioner's detention was lawful. Petitioner appealed to the Tennessee Supreme Court and this action was affirmed. State ex rel. Carden v. Henderson, (Tenn.Sup.Ct., February 24, 1967, unreported).

It appears without dispute from the testimony adduced at the evidentiary hearing that, following the murder conviction, petitioner's counsel was of the opinion that the only ground for appeal was the contention that petitioner had been convicted solely upon the uncorroborated testimony of an accomplice, and

that a verbatim transcript would be "absolutely essential" to a successful appeal. It further appears, however, that neither petitioner nor his parents were able to provide funds for the preparation of a verbatim transcript. Petitioner's counsel considered that the original fee paid him included representation upon appeal, but concluded that an appeal would be futile in the absence of a transcript. No transcript was ever prepared. The court reporter at petitioner's murder trial has since died, and his notes have become lost.

At the evidentiary hearing, the petitioner testified that he had asked his counsel to appeal his conviction, had received assurances that it would be appealed and never knew that it had not been appealed until some time in 1959. His stated reason for failing to institute collateral proceedings until 1966 was that prison authorities had advised him that he would have a better chance for parole if he did not file for a writ of habeas corpus. On the other hand, petitioner's former counsel, at the hearing, testified that he had told the petitioner at the time the appeal was pending that "we could not appeal unless there was a transcript and money furnished for it". Petitioner's father testified that he never talked to Mr. Davis until a time about one year after the trial, and never asked Mr. Davis to appeal the case. Petitioner's brother, who was 16 years old at the time of the criminal trial, testified that he had tried to get Mr. Davis to appeal the case, but his testimony is unclear as to when this took place. He did state that it was after petitioner had gone to the penitentiary, which petitioner says was about December 30, 1952.

At the evidentiary hearing, the petitioner's parents testified that immediately after the conclusion of petitioner's murder trial and while still in the courtroom, they approached Raulston Schoolfield, at that time Judge of the Criminal Court of Hamilton County, who presided at the petitioner's trial and with whom they were personally acquainted, and asked him what was "the best thing * *

to do". Although, at the state habeas corpus hearing, the judge erroneously ruled that Mr. Carden could not testify as to what Judge Schoolfield's reply was on grounds that it was hearsay, the nature of such reply, according to the Cardens, eventually found its way into the record. The Cardens stated that the trial judge told them it would cost $500.-00 to appeal the conviction and that Mr. Carden rejoined that he was not able to pay $500.00 to go to the Supreme Court. Mr. Carden also testified that Judge Schoolfield knew his financial condition and that he was a laborer.

Mr. Schoolfield, also a witness at the hearing, testified that he was certain no such conversation occurred, as he would have had no idea what it would cost to appeal. He also observed that it had been some 14 years ago and details might have escaped him.

Upon petitioner's appeal from his unsuccessful attempt to obtain habeas corpus relief in the state court, the Tennessee Supreme Court observed that petitioner's trial counsel had erred in his belief that a verbatim transcript was essential to successful appeal of petitioner's conviction:

"The Warden through counsel in the present case contends, and we think correctly so, that a narrative bill of exceptions might have been prepared and would have been sufficient. We recently in Sambolin v. State, 215 Tenn. 569, 387 S.W.2d 817, when a similar contention as here was made, held that a narrative bill of exceptions was 'ample for the full needs of this Court to give the defendant an appellate review.' An alleged error in the original trial certainly could have been amply presented to allow us to determine if an appellate review had been possible."

Petitioner does not expressly advance the contention that he was denied effective assistance of counsel, either by reason of the above mentioned error or by counsel's failure to advise the Court of petitioner's indigency and his consequent inability to perfect an appeal. Of course, at the

time of these events Tennessee had no statutory provision for free transcripts for indigent defendants. In 1953, the Tennessee legislature provided for free transcripts in a limited class of cases Acts 1953, Ch. 74, Sec. 1, codified as T.C.A. § 40–2010, since repealed). It was only very recently that broad provision for such transcripts was made (Acts 1965, Ch. 221, Secs. 1–15, codified as T.C.A. §§ 40–2029 through 40–2043). It must also be remembered that prior to 1956, and the decision in Griffin v. People of State of Illinois, (1956) 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, 55 A. L.R.2d 1055, reh. den. 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480, the lower federal courts were unanimous in holding that an indigent defendant was not denied constitutional rights by the refusal of a state to aid him in prosecuting an appeal or pursuing a post-conviction remedy. See annotation at 6 L.Ed.2d 1295.

██ It is clear that neither the failure of counsel to request a free transcript nor the failure to perfect an appeal upon a narrative bill of exceptions would constitute denial of effective assistance of counsel. Horton v. Bomar, (C.A.6, 1964) 335 F.2d 583. Likewise, it is clear that the failure of retained counsel to take action not apparent at the time but which later appears proper could not constitute state action nor is it a peril peculiar to an indigent. United States ex rel. Boyance v. Commonwealth of Pennsylvania, (E.D.Pa., 1963) 219 F. Supp. 12.

Petitioner does contend that he was deprived of constitutional rights by reason of the failure of the trial judge to direct that he be provided a free transcript in aid of his appeal.

██ Of course, a state, acting through its courts, may not deny an indigent equal protection of the laws or due process of law by refusing to aid him in prosecuting an appeal or pursuing post-conviction relief where his indigency prevents or hinders him in the exercise of his rights, and where the fact of his indigency and the resulting harm come to the attention of the Court.

Griffin v. People of State of Illinois, (1956) 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891; Eskridge v. Washington, (1958) 357 U.S. 214, 78 S.Ct. 1061, 2 L. Ed.2d 1269; Burns v. State of Ohio, (1959) 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209; Smith v. Bennett, (1961) 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39; Douglas v. People of State of California, (1963) 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 81, reh. den. 373 U.S. 905, 83 S.Ct. 1288, 10 L.Ed.2d 200; Draper v. Washington, (1963) 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899; Lane v. Brown, (1963) 372 U.S. 477, 83 S.Ct. 768, 9 L. Ed.2d 892. However, where a defendant is represented by retained counsel in the trial court, there is no obligation upon the Court to continuously determine whether the defendant is in need of the assistance of the state in prosecuting an appeal. The case of Norvell v. State of Illinois, (1963) 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456, reh. den. 375 U.S. 870, 84 S.Ct. 27, 11 L.Ed.2d 99, is in many ways similar to the instant case. There the petitioner was convicted of murder in the Illinois courts in 1941 and was sentenced to 199 years in prison. Though indigent, he had a lawyer at the trial. In 1956, petitioner moved for a stenographic transcript of his trial, but the official reporter had died some years earlier and no one could read his shorthand notes. Efforts to reconstruct the trial evidence were unsuccessful, and petitioner's motion for new trial was denied. Justice Douglas, writing for six members of the Supreme Court, stated the question in the following way:

> "The issue in the case is whether Illinois has made an 'invidious discrimination' against petitioner. Griffin v. [People of State of] Illinois * * *. More precisely, the question is whether when a transcript cannot subsequently be obtained or reconstructed through no fault of the State, may it constitutionally draw the line against indigents who had lawyers at their trial but after conviction did not pursue their remedy? Illinois on the face of its rules has denied relief in such a case. And so we have the narrow question—whether a State may avoid the obligation of Griffin v. [People of State of] Illinois, where, without fault, no transcript can be made available, the indigent having had a lawyer at the trial and no remedy having been sought at the time.

> "If it appeared that the lawyer who represented petitioner at the trial refused to represent him on the appeal and petitioner's indigency prevented him from retaining another, we would have a different case. * * * "

The Court went on to note that petitioner's attorney could not recall specifically if he was called upon for an appeal or to obtain a transcript of the trial.

The Court held:

> " * * * a State, in applying Griffin v. [People of State of] Illinois to situations where no transcript of the trial is available due to the death of the court reporter, may without violation of the Due Process or Equal Protection Clause deny relief to those who, at the time of the trial, had a lawyer and who presumably had his continuing services for purposes of appeal and yet failed to pursue an appeal."

Likewise, in Horton v. Bomar, (D.C. Tenn., 1964) 230 F.Supp. 271, Judge William E. Miller said:

> "Where a defendant appears in court represented by competent, retained counsel the trial judge may reasonably assume that the rights of the defendant will be protected. The trial judge is not obliged to inquire into the continuing status of their relationship. At the very least petitioner should have made some effort to communicate to the trial judge the information that he wished to appeal but was unable to hire an attorney to assist him. In the words of McIntosh v. Commonwealth, 368 S.W.2d 331 (Kentucky 1963), 'It was not incumbent on the trial court to wait on him at the county jail lest some need arise that might not otherwise be called to its attention'."

See also, to the same effect, Wampler v. Warden of Maryland Penitentiary, (1963) 231 Md. 639, 191 A.2d 594; State ex rel. Dych v. Bomar, (Tenn.Sup. Ct.1964), 213 Tenn. 699, 378 S.W.2d 772.

Counsel for petitioner relies quite heavily upon the recent decision of the Fifth Circuit in the case of Pate v. Holman, (C.A. 5, 1965) 341 F.2d 764, also similar to the present case. There the Court undertook an exhaustive discussion of the recent indigency decisions in the course of reversing the action of the District Court in dismissing a petition for a writ of habeas corpus. Petitioner was convicted of burglary and grand larceny in 1950. He was represented by counsel retained by his mother and wife. He asked his trial counsel to appeal and sent his wife and sister to ask him to perfect an appeal. Two months after the trial (Alabama allows six months to appeal), the attorney was recalled to military service. He had not filed a motion for new trial or taken any action in regard to the appeal because he was not paid a fee for doing so. The petitioner made attempts to employ other counsel but was unable to do so, allegedly because of indigency. Petitioner contended that he twice wrote the trial judge and wrote also the state attorney general and the county solicitor, explaining his inability to retain appellate counsel. No appeal was ever filed on behalf of petitioner. The Court distilled the following principles from recent cases dealing with the rights of indigents:

"It is not necessary that the trial judge initiate action toward the appointment of appellate counsel by advising a convicted person of his rights or by making any inquiry as to his indigency, although such minimal action at the time of sentencing seems highly desirable. * * * State action (constituting a deprivation of Fourteenth Amendment rights) is shown when a responsible official in the State's system of justice rejects a request for counsel or fails to take proper steps toward appointment of counsel for a convicted defendant when he has knowledge of the defendant's indigency and desire for appellate counsel. When an accused person retains counsel on the original trial, the State may rely on the presumption that the accused's lawyer will protect his client's rights on appeal. But that presumption is rebuttable.

"Here, if Pate is telling the truth, he rebutted the presumption. If indeed Pate wrote the County Solicitor, wrote the Attorney General of Alabama, and twice wrote the trial judge, telling them of his difficulties and asking for the assistance of appellate counsel, he did all, and perhaps somewhat more, than was necessary to put in motion the machinery for adequate review of an indigent's conviction."

The Court ordered a hearing in the District Court upon the issues whether Pate was an indigent, whether his indigency had caused his failure to have appellate counsel, and whether the petitioner informed the trial judge, state attorney general or county solicitor of his inability to obtain appellate counsel because of his indigency. Of course, in the *Pate* case, it was the contention of the petitioner that, after the trial, he was without counsel, and that this fact had been brought to the attention of the Court and other state authorities. In the present case it appears to be undisputed that petitioner was represented by counsel at all times pertinent to the appeal. Petitioner's appeal was never perfected because petitioner's counsel was of the opinion that a verbatim transcript was necessary, and petitioner was unable to pay for such transcript. This distinction is important as it relates to the responsibility of the trial judge. It is quite different for a trial judge on the one hand to fail to take action when advised that retained counsel has withdrawn and a defendant is unable to retain other appellate counsel and on the other hand to fail to take action to provide a free transcript when a defendant is represented by retained counsel and such counsel has made no representation to the trial judge that

such a transcript is necessary to an appeal and has made no request for a free transcript, whether such defendant's inability to pay therefor has or has not been informally brought to the attention of the trial judge.

It should be noted that it is a matter of dispute whether the trial judge was given notice in any fashion of petitioner's indigency at the time the appeal was pending. As stated hereinabove, at the evidentiary hearing in the Criminal Court of Hamilton County upon petitioner's petition for a writ of habeas corpus, testimony was heard from petitioner's parents and from the trial judge with regard to an alleged conversation in the courtroom immediately after the return of the jury verdict. It appears that all of the evidence which could shed light upon the existence and nature of such conversation was brought out at that time. The Court filed no opinion which would clearly indicate its finding as to whether a conversation took place or as to what, if anything, was said. The Supreme Court of Tennessee, in reviewing the proceedings, simply said the following:

> "The only evidence in this record on this habeas corpus hearing is the statement of the father of the petitioner that the trial judge was informed of the petitioner's financial condition. This statement was flatly contradicted by the trial judge, and in addition to his contradiction he gave a very plausible reason of why he would have made no such statement to the father. The mere fact that he did give notice and inquire why an appeal was not perfected shows that the trial judge at that time was trying to do everything that he could to see that everyone was looked after and protected."

The Court is of the opinion that the evidentiary hearing before the state court upon the habeas corpus proceedings afforded the petitioner a full and fair hearing upon all issues of fact and that it accordingly is not necessary for this Court to conduct any further evidentiary hearing under the guidelines laid down by the Supreme Court in the case of Townsend v. Sain, (1963) 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. Even if the testimony be taken in its most favorable light to petitioner, that is, that petitioner's parents indicated to the trial judge that they would be unable to raise $500.-00 to appeal to the Supreme Court, the Court is of the opinion that the trial judge was under no duty to take action to provide petitioner a free transcript on his own motion. The alleged conversation took place after the trial upon July 17, 1952. Thereafter, a motion for new trial was filed on behalf of petitioner, a hearing was had upon the motion, the motion was overruled, an exception was made to this ruling and an appeal was prayed. Petitioner's retained counsel took part in these proceedings. After the expiration of time for the filing of the bill of exceptions, a show cause notice was sent to petitioner's counsel. The trial judge was thus aware throughout the critical period that petitioner was represented by able and competent counsel. So far as the record shows, nothing ever came to the attention of the trial judge which would indicate that a free transcript was necessary to petitioner's appeal. In fact, it was not necessary. After no response was made to the show cause order, the trial judge might well have concluded that petitioner and his counsel had decided to abandon the appeal for lack of confidence in its merits. To require a trial judge to call in an able and experienced trial attorney for the purpose of reviewing, in schoolmaster fashion, the attorney's tactics on appeal or his opinion of possible errors the trial judge may have committed would make a novel addition to the role of judges in the administration of criminal justice. The Court is of the opinion that the principles of *Norvell* and *Pate* control in the instant situation, and that where no transcript of the trial is available due to the death of the court reporter, a petitioner who, although unable because of indigency to obtain a

transcript at the time of the trial, had retained counsel at that time and had the lawyer's continuing services for purposes of appeal and yet failed to pursue an appeal from his conviction, such a petitioner is not entitled to relief, at least in the absence of a showing that petitioner's indigency and his need for a verbatim transcript were communicated to the trial judge or some responsible state officer.

The Court is accordingly of the opinion that the record in this case shows as a matter of law that petitioner is not entitled to relief, and that his petition should therefore be dismissed. An order will enter accordingly.