Charles E. **HART**, Petitioner-Appellee,

v.

Frank **EYMAN**, Warden, Arizona State Prison, State of Arizona, et al., Respondents-Appellants.

No. 26347.

United States Court of Appeals, Ninth Circuit.

March 22, 1972.

As Modified April 21, 1972.

Certiorari Denied June 12, 1972.
See 92 S.Ct. 2441.

Roderick A. Dietz (argued), Gary K. Nelson, Ariz. Atty. Gen., William P. Dixon, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellants.

Richard A. Miller (argued), Philip F. Schneider, of Fennemore, Craig, Von Ammon & Udall, Phoenix, Ariz., for petitioner-appellee.

Before HUFSTEDLER and TRASK, Circuit Judges, and HILL,* District Judge:

IRVING HILL, District Judge:

In this opinion, we consider the extent of the obligation of a state to provide to an incarcerated prisoner who has filed a habeas corpus petition in the federal court a reasonable substitute for the transcript of his trial when the court reporter's notes are lost. And we also consider the propriety of an order of a federal district judge in such a case which gives the state the alternatives of (1) holding the necessary hearings in the state court for the creation of a reasonable substitute for a trial transcript, (2) granting petitioner a delayed appeal in the state court, (3) releasing him from custody, or (4) setting aside his conviction and re-trying him.

Hart, the petitioner herein, was convicted of murder in an Arizona state court in 1961 and sentenced to life imprisonment. At his trial, he was represented by court-appointed counsel. No appeal was ever perfected because, ac-

---

* Honorable Irving Hill, United States District Judge for the Central District of California, sitting by designation.

cording to Hart, he was transferred to state prison immediately upon being sentenced where he "did not know how to start an appeal" and was without counsel or law books. In 1966, Hart made his first application for post-conviction relief, an application for habeas corpus filed in the Superior Court of Pinal County, Arizona, in which his trial was held. Thereafter, habeas corpus petitions were filed in the Arizona Court of Appeals and in the Arizona Supreme Court. All were denied without a hearing and without opinion.[1] The District Court held that these various applications to the state courts constituted an exhaustion of state remedies. Before seeking the aid of the federal courts, petitioner in June 1967 filed a motion in the state trial court to obtain a copy of his trial transcript. His motion was immediately denied.

After this history, the instant petition for habeas corpus was filed in the federal District Court in November 1968. The filing was *in pro per* and in *forma pauperis*, as was the case in his state petitions. The principal ground asserted for relief is the introduction against petitioner of a confession which was alleged to have been obtained by coercion, fraud and threats. The District Court appointed counsel for petitioner who has served throughout without fee.

On motion of petitioner's counsel, the District Court on March 5, 1969, ordered the state to produce a transcript of the petitioner's trial for use by the petitioner and his counsel (R. 253). For some reason, the Arizona Attorney General, despite this unequivocal order from the federal court for the production of a transcript, felt it necessary to move in the Arizona Supreme Court for an order

of that court directing that a reporter's transcript be produced and provided to petitioner by the Arizona trial court.[2] Such a motion was filed March 16, 1969 (R. 276) and was immediately denied by the Arizona Supreme Court on the ground that it had no jurisdiction to order the Arizona trial court to furnish a transcript for the purpose of fulfilling the federal court order (R. 278). Petitioner informed the federal court of Arizona's refusal to provide the reporter's transcript and was permitted to add to his federal habeas petition, as an additional ground for relief, the state's refusal to provide the transcript.

On August 7, 1969, the District Court entered an order granting the writ of habeas corpus unless a reporter's transcript was produced within ninety days from that date or good cause was shown why the transcript could not be made available within said period (R. 310). The ninety-day period apparently expired without any transcript being furnished and the District Court apparently entered an order on November 6, 1969, for release of petitioner although a copy of that order does not appear in the Clerk's transcript furnished to us. On November 7, 1969, Arizona moved in the District Court for a temporary stay of the order of release, alleging that the court reporter had been under a "misunderstanding" concerning the preparation of the transcripts which had now been straightened out and that the transcript would "be prepared forthwith." A temporary stay of the release order was granted and a hearing was noticed for November 12, 1969, in the federal court. On that date, for the first time, the State Attorney General revealed to the petitioner and to the federal court that the reporter's notes were lost.[3]

---

1. There is a brief statement filed by the Arizona Court of Appeals but it does not deal at all with the point at issue in the present case, an allegedly coerced confession.

2. The only possible explanation for this delaying maneuver, hinted at in the record, was the Attorney General's concern

that the reporter could not be paid for the transcript without such an order. R.T. 11/12/69, p. 19.

3. The reporter's testimony illustrates a laxity and lack of system and security governing the storage of court reporters' notes which, it seems to us, is generally prevalent throughout the American court

At the hearing on November 12, 1969, the Arizona Attorney General conceded (R.T. 22) that Arizona has an established substitute procedure (in the nature of an agreed statement of facts prepared by the attorneys, judge and other interested parties after a hearing) for use when a reporter's transcript cannot be produced. But he informed the District Court that under Arizona procedure this could not be made available to petitioner except in connection with a delayed appeal in the Arizona Supreme Court and petitioner had never sought a delayed appeal therein.

In an obvious effort to accommodate the state, the district judge followed the suggestion of the Arizona Attorney General and by order of December 19, 1969, deferred further action until petitioner could file in the Arizona courts his motion for a delayed appeal and for a hearing (which the district judge called a "Norvell v. Illinois" hearing [373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed. 2d 456]) for the creation of a transcript substitute. The petitioner followed the district judge's suggestion and made the appropriate motion for delayed appeal in the Arizona Supreme Court. His counsel apprised that court of the District Court's order of December 19, 1969. But the Arizona Supreme Court, to the obvious embarrassment of the Arizona Attorney General, denied the motion without a hearing.

This led to the District Court's order filed June 8, 1970, the order appealed from herein. That order came almost three years after petitioner's first formal effort to obtain a reporter's trial transcript, almost two years after his habeas corpus petition was first filed in the federal court and fifteen months after the District Court's first order for the production of a reporter's transcript. In the order appealed from (R. 353), the District Court gave the respondent Warden and the State of Arizona four alternatives, one of which was to be exercised within sixty days from the date of the order. As stated above, the specified alternatives as to the petitioner are: release him, grant him a delayed appeal by the state courts (which, under state procedure, would apparently automatically result in the preparation of a transcript substitute), afford him a "Norvell v. Illinois" hearing (another method whereby the federal court would have a transcript substitute upon which to act), or set aside his conviction and re-try him.

Arizona challenges this Order as being beyond the power of the District Court. In effect, Arizona contends that if the District Judge desires to have a transcript substitute prepared, he should himself hold the hearing necessary for its preparation and he cannot order the state courts to hold such a hearing, either directly or as an alternative to the granting of a writ of habeas corpus and release of petitioner.

■ The substantive law and the procedural requirements for criminal trials involving allegedly coerced confessions have now been well established. The landmark cases were decided after this petitioner's trial but the requirements are retroactive. When the state seeks to use a confession which the defendant claims was coerced, a hearing outside the presence of the jury must be held as to the circumstances surrounding the confession and the trial judge must make a preliminary finding of voluntariness and non-coercion. Jackson v. Den-

---

system. See as examples: United States ex rel. Smart v. Pate, 318 F.2d 559, 561 (7th Cir. 1963) ; Carden v. Henderson, 284 F.Supp. 1009, 1011 (E.D.Tenn.1967) ; Rambo v. Rambo, 84 Cal.App.2d 632, 634, 191 P.2d 480 (1948) ; Duarte v. Rivers, 90 Cal.App.2d 152, 155, 202 P.2d 612 (1949) ; Lilienthal v. Hastings Clothing Co., 123 Cal.App.2d 91, 92, 266 P.2d 56 (1954). The reporter testified that some reporters' notes in her county are stored at seven different places, i. e., the County Hospital, the basement of the new courthouse building, the boiler room of the old courthouse building, the Adult Probation Office storage area, the old jail (two floors thereof), the storage warehouse at Fifth and Jefferson and the court reporters' official storage area (Rep. Tr. 11/12/69, p. 5).

no, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964). Thereafter, if such a finding is made, the same testimony of the surrounding circumstances and the confession may be presented to the jury * which must be instructed that it should determine the voluntariness of the confession and should disregard it unless they find voluntariness and non-coercion. As stated, these rules of law are retroactive. Gladden v. Unsworth, 396 F.2d 373, 376 (9th Cir. 1968). Even if the voluntariness issue was properly presented to the jury, if the record does not make it clear that the trial judge made the required preliminary determination, a federal court, acting on a habeas corpus petition, must return the case to the state courts with an order for release of the petitioner unless such a finding by the judge is presently made. Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964).

■ In the instant case, the clerk's transcript indicates that there were some proceedings outside the presence of the jury concerning voluntariness of the confession (R. 54, 55) and that the question of voluntariness was apparently submitted to the jury under what appears to have been a proper instruction.[4] But what is not revealed by the clerk's transcript is whether the trial judge made the preliminary finding of voluntariness required by the cases cited above. That can only be determined by a reporter's transcript or a transcript substitute. Until what transpired in the trial court and what finding, if any, the trial judge made, is shown by means of a reporter's transcript or a transcript substitute, the federal court is unable to perform its proper function and unable to decide the case pending before it. Under the facts of this case, the burden

of producing the necessary record to enable the federal court to decide the case is clearly on the state.

Arizona characterizes the trial court's order as "nothing more than a remand with directions." [5] It urges that under proper standards of federalism and prompted by considerations of mutual respect of state and federal courts for the dignity and independence of each other, the order in question should be held to be beyond the power of a federal court.

■ We find no basis for declaring the trial court's order to be one which violates principles of good federalism or is beyond its power. There are ample precedents in habeas corpus situations for the issuance of an alternative form of order by a federal court whereby the state is given various alternatives which include release of the petitioner as one of the alternatives or which provide for release of the petitioner if none of the alternatives is met. In Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed. 2d 109 (1964), a District Court had ordered release of the habeas petitioner unless the state court re-tried him within a reasonable time. The order was affirmed by the Supreme Court with the addition of another alternative to release of the petitioner, namely, a hearing in the state court as to whether the trial judge had made the necessary preliminary determination of the voluntariness of a confession under Jackson v. Denno. In Gladden v. Unsworth, *supra*, this court, in disposing of the habeas petition, issued an alternative form of order much like the one in question here. This court's order provided that within a reasonable time the state court should either grant a new trial or conduct a

---

* Presentation to a jury is not a constitutional requirement. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

4. See handwritten Instruction No. 9, transmitted to this Court by letter from the Arizona Attorney General dated September 2, 1971.

5. In Carter v. Eyman, 265 F.Supp. 957 (D.Ariz.1967), a different federal judge *in haec verba* "remanded" a case involving a similar question of coerced confession to the Arizona Superior Court. The order was apparently not appealed and was accepted and acted upon by the Arizona courts. See Carter v. Eyman, 281 F.Supp. 776 (D.Ariz.1968).

present evidentiary hearing concerning the voluntariness of the confession at issue. The order went on to provide that if the state court did not undertake one of those alternatives within the time specified, the petitioner should be released. In Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), a case heavily relied on herein by Arizona on another point, the Supreme Court affirmed a District Court order granting release of a habeas petitioner unless the state court granted him a new trial forthwith. 372 U.S. at 316, 83 S.Ct. 745.

Chessman v. Teets, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957), is perhaps the most interesting precedent of all. There, the reporter at the state court trial had died after transcribing a small portion of the trial and there was great difficulty in reading his notes. The state court undertook a procedure for the creation by others of a purported transcript. The defendant was not represented during that procedure and challenged the accuracy of the purported transcript. After exhausting his state remedies, he applied to the federal court for a writ of habeas corpus. The Supreme Court held that the state court procedure in creating the purported transcript lacked the requirements of due process and remanded the case to the District Court with instructions to enter an order as prescribed by the Supreme Court in its opinion. The prescribed order permitted the state courts a reasonable time within which to comply with constitutional requirements in connection with the transcript, and, failing such action, ordered that the petitioner be discharged. 354 U.S. at 166, 77 S.Ct. 1127.

■ The instant order cannot be characterized as a remand to the state court with an order to conduct a hearing. It is a conditional order providing various alternatives to the state court, including the eventual sanction of release of the prisoner if one of the other alternatives is not complied with. We view the order as a proper exercise of federal jurisdiction and power in the field of habeas corpus.

Arizona apparently argues that even if the instant order lies within the jurisdiction and power of the District Court, it should be reversed under the teaching of Townsend v. Sain, *supra*. Arizona particularly relies upon the following language:

"Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.

.   .   .   .   .   .

.   .   . Of course, if because no record can be obtained the district judge has no way of determining whether a full and fair hearing which resulted in findings of relevant fact was vouchsafed, he must hold one." 372 U.S. at 313 and 319, 83 S.Ct. at 757, 760.

We think Arizona misreads Townsend v. Sain and the above quoted language. *Townsend* concerned itself with the question of when the federal court must conduct its own evidentiary hearing on factual matters and when it may forego such a factual hearing of its own on the ground that there has been a proper factual hearing, meeting federal constitutional requirements, in the state court proceedings. We believe that the language in question was meant only to emphasize that where it cannot be determined from the record of the state court proceedings that a factual hearing there met all of the standards and requirements enunciated in *Townsend*, the federal court has no alternative but to conduct its own factual hearing.

The type of a hearing which is required to create a transcript substitute is not the type of factual hearing dealt with in *Townsend*. The hearing neces-

sary to create a transcript substitute is one to determine what actually occurred at the state court trial. Under the facts of the instant case, the federal court is entitled to require the state court to take the steps necessary to inform the federal court as to what occurred at the trial on penalty of releasing or re-trying the petitioner.

Although the instant order is not a direct order to the state to conduct the hearing necessary for the creation of a transcript substitute, even if it were construed to be a direct order, it might well be valid. Such a holding would be a natural and logical extension of the principle enunciated by the Supreme Court in Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949). In that case, the Court held that every state was required to provide some clearly defined method by which state prisoners could raise, within the structure of the state courts, their claims of denial of federal rights. In the instant case, it cannot be determined whether petitioner has been afforded his constitutional right to a preliminary judicial determination of the voluntariness of his confession unless and until a reporter's transcript or a substitute therefor is provided. We think the obligation of providing one or the other devolves upon the state and the state alone. Until it is fulfilled, there is no way for the state court initially, and thereafter the federal court, to determine if petitioner's federal constitutional rights were infringed.

Underlying this entire appeal and the events which preceded it, we detect a note of conflict and asperity in the relationships between the state and federal courts in Arizona. It seems incomprehensible to us that on this record the state can legitimately attack the acts and orders of the trial judge herein as an affront to the dignity and independence of its courts. To the contrary, throughout the long history of this matter the federal District judge appears to have abstained from acting, temporized his acts, and stayed their effect, so as to give the state every possible opportunity to afford the petitioner his undoubted constitutional rights without intervention of the federal courts. If the state had acted to provide a reporter's transcript when one was first requested, or even when first ordered to do so, the reporter's notes might then have been available. The facts of this case illustrate the wisdom of Mr. Justice Brennan's statement in his concurring opinion in Case v. Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), in which he said:

"None can view with satisfaction the channeling of a large part of state criminal business to federal trial courts. If adequate state procedures, presently all too scarce, were generally adopted, much would be done to remove the irritant of participation by federal district courts in state criminal procedure." 381 U.S. at 345, 346, 85 S.Ct. at 1492.

Arizona has delayed much too long in doing what it should do and is obligated to do in connection with the instant habeas corpus proceeding. The order of the District Court is affirmed. The mandate will issue now. The sixty-day period referred to in the District Court's order shall commence to run with the date of the filing of this opinion.

TRASK, Circuit Judge (dissenting):

I respectfully dissent from the opinion of the majority in this case.

Petitioner's original application for a writ of habeas corpus asserted as ground for release, the introduction against him in his state criminal trial for murder a confession which was alleged to have been obtained by coercion, fraud and threats. The district court ordered the respondent to produce a transcript of petitioner's trial, but the State Attorney General was unable to do so because the court reporter's notes were lost. The district judge then deferred action on the petition until petitioner could file in the Arizona state court a motion for a delayed appeal and hearing to create a transcript substitute. Petitioner's appropriate motion before

the Arizona Supreme Court was denied without a hearing. The district court then filed the order the propriety of which is in question in this appeal. That order gave the State four alternatives: (1) hold the necessary hearing to create a substitute transcript; (2) grant petitioner a delayed appeal in the process of which a substitute transcript would be created; (3) release petitioner from custody; or (4) set aside petitioner's conviction and retry him.

The vice I find in the district court's order is the alternative which requires the state to release the prisoner if none of the other alternatives is elected. The state has already denied a petition for a delayed appeal. It has indicated by its denial of applications for habeas corpus (three in number) that correctly or incorrectly it has determined that the conviction was in all respects according to law and that it was not in violation of the Constitution and laws of the United States or of the State of Arizona. It has also indicated rather clearly that it intends to take no further action. The remaining alternative is release.

The present petition was one addressed to the District Court of the United States. That court has jurisdiction

"[t]o entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S.C. § 2254(a).

However,

"The writ of habeas corpus shall not extend to a prisoner unless—

.    .    .    .    .    .

"(3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . ." 28 U.S.C. § 2241(c) (3).

The district court's order states that

"petitioner [has] been denied his right of due process and equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States, in that he was granted no hearing of any kind [by the Arizona Supreme Court] but was dealt with summarily, 28 U.S.C. § 2243, . . ."

The district court cites no relevant authority for its determination,[1] and adduced no evidence at its hearing which supports that finding. Likewise, the majority opinion tells us that "[u]nder the facts of this case, the burden of producing the necessary record to enable the federal court to decide the case is clearly on the state." Again no citations are made to support this assertion.

Ariz.Sup.Ct. (Crim.) R. 16(a), 17 A. R.S., provides that a defendant in a criminal action who has failed to take an appeal within the statutory sixty-day period may apply to the court for an order permitting him to take a delayed appeal, if the failure to appeal has been without fault on his part.[2] The Arizona Supreme Court denied petitioner's motion under this Rule.

A writ of habeas corpus may not be granted just because the state court de-

---

1. 28 U.S.C. § 2243 sets out the procedures to be followed by the federal court upon receipt of a petition for writ of habeas corpus. It has nothing to do with the constitutionality of the Arizona Supreme Court's denial of petitioner's motion for delayed appeal. In fact, by failing to hold a hearing directed to the issue whether petitioner was being held in violation of his constitutional rights by this action of the Arizona Supreme Court, the district court failed to follow the mandate of 28 U.S.C. § 2243.

2. "16(a) Motion to Take Delayed Appeal. A defendant who has, without fault on his part, failed to take an appeal within the sixty day period prescribed by Rule 348 of the Rules of Criminal Procedure may, by written motion supported by affidavit, apply to this court for an order permitting him to take a delayed appeal. The clerk shall forthwith notify the attorney general who shall respond to such motion within five days."

clines to hold a hearing which would result in the creation of a substitute transcript. That failure is not, per se, a violation of petitioner's constitutional rights. The judgment of the Arizona Supreme Court carries with it a presumption of regularity, Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and mere allegations in the habeas petition are insufficient to justify the grant of the writ, United States ex rel. Williams v. Deegan, 279 F.Supp. 53, 59 (S.D.N.Y.1967). The burden of proof is upon the petitioner to establish his claim. Johnson v. Zerbst, *supra*; Williams v. Smith, 434 F.2d 592 (5th Cir. 1970); Allen v. Perini, 424 F.2d 134 (6th Cir.), cert. denied, 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970). To this end, the district court must "hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

The Supreme Court, in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), dealt with the right to a plenary hearing in federal habeas corpus, and set down six instances when the district court would be required to hold such hearings:

"If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."
*Id.* at 313, 83 S.Ct. at 757.

Stated summarily, "a federal evidentiary hearing is required unless the state-court trier of fact [either at the time of the trial or in a collateral proceeding] has after full hearing reliably found the relevant facts." *Id.* at 312–313, 83 S.Ct.

at 757. This duty of the district court derives from the purpose of federal habeas corpus, to remedy "detentions of fundamental illegality" by providing a "trial-type proceeding" by way of an "original civil proceeding." *Id.* at 311, 83 S.Ct. 745. The Court further stated:

"State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Id.* at 312, 83 S.Ct. at 756.

In discussing the "proper application" of the tests it outlined, the Court considered the indispensibility of a complete state record in determining whether a writ of habeas corpus should issue.

"A District Court sitting in habeas corpus clearly has the power to compel production of the complete state record. Ordinarily such a record—including the transcript of the testimony (or if unavailable some adequate substitute, such as a narrative record), the pleadings, court opinions, and other pertinent documents—is indispensable to determining whether the habeas applicant received a full and fair state-court evidentiary hearing resulting in reliable findings. (citation omitted). *Of course, if because no record can be obtained the district judge has no way of determining whether a full and fair hearing which resulted in findings of relevant fact was vouchsafed, he must hold one. So also, there may be cases in which it is more convenient for the district judge to hold an evidentiary hearing forthwith rather than compel production of the record. It is clear that he has power to do so."* 372 U.S. at 319, 83 S.Ct. at 760 (emphasis added).

Under the rationale and indeed the literal language of *Townsend*, the district judge in this case had a duty to hold an evidentiary hearing, to make relevant findings of fact on petitioner's claim that the admission of his confession dur-

ing his criminal trial violated the Fourteenth Amendment, before ordering the petitioner's release, conditionally or otherwise. Because the district court was unable to obtain a record, it had to hold a full factual hearing. To release the prisoner without doing so would be in derogation of the principle that state prisoners are entitled to relief only when they have proved their detentions are constitutionally infirm.

The majority attempts to distinguish *Townsend* as applicable only when the federal district court has the record of the state court proceeding before it and cannot determine from that record whether there has been a full and fair hearing resulting in supported findings of fact. But, as pointed out above, the Court in *Townsend* explicitly considered the situation where "no record can be obtained," 372 U.S. at 319, 83 S.Ct. 745, 760, as was the case here. "[I]f . . . no record can be obtained[,] the district judge . . . must hold [an evidentiary hearing]. *Id*. The majority's reading of *Townsend* narrows the case's application to its own facts, while the Court expressly stated its intention to establish an "open-ended" categorization, because "we cannot here anticipate all the situations wherein a hearing is demanded." *Id*. at 317, 83 S.Ct. at 759.

Under *Townsend,* then, the duty to create a record sufficient to enable the federal district court to decide whether the writ of habeas corpus should issue devolves not only upon the state courts, as the majority asserts, but upon the federal district court as well. Without holding such an evidentiary hearing, the district judge did not have power to order the release of the petitioner. He has not determined that the prisoner is being held in derogation of his federal constitutional rights.

I find additional support for my reading of *Townsend* in Allen v. Perini, 424 F.2d 134 (6th Cir.), cert. denied, 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970). In that case, the court discussed the question whether a writ of habeas corpus could issue on a default

judgment for respondent's failure to file a timely return to the district court's show cause order. The court held that the district court did not have the power to grant the writ in the absence of an evidentiary hearing and unless and until the averments of the petition were proved by competent evidence. This holding was based on the court's reading of *Townsend,* and on the language of 28 U.S.C. §§ 2241(c) (3) and 2243.

"The burden to show that he is in custody in violation of the Constitution of the United States is on the prisoner. Jones v. Russell, 396 F.2d 797 (6th Cir.); Gray v. Johnson, 354 F.2d 986 (6th Cir.). The failure of State officials to file a timely return does not relieve the prisoner of his burden of proof. Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons without evidentiary hearings. We conclude that the failure of the Office of the Attorney General of Ohio to file a timely return does not afford a basis for *instanter* relief. Despite the delinquency of the State, the District Court was obligated to decide the case on its merits. McGuffey v. Turner, 267 F.Supp. 136 (D. Utah); cf. Taylor v. United States, 282 F.2d 16, 23–24 (8th Cir.). We conclude that in spite of the untimeliness of the State's return, the District Court would have no power to grant the writ of habeas corpus in the absence of an evidentiary hearing and unless and until the averments of the petition have been proved by competent evidence." 424 F.2d at 138.

The majority attempts to support the order of the district court as a conditional order. Conditional releases are within the power of the district court to fashion an appropriate remedy "as law and justice require." 28 U.S.C. § 2243. In Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961), Justice Frankfurter discussed the rationale behind conditional orders. After determining that the trial judge in petitioner's trial for murder had not applied the

proper constitutional standard in determining that petitioner's confession was voluntary and admissible, the Court remanded the case to be held to give the state an opportunity to retry the petitioner within a reasonable time; in default thereof, the petitioner was to be discharged.

"The District Court might conceivably hold a hearing *de novo* on the issue of coercion. But such a procedure would neither adequately protect the federal rights of state criminal defendants nor duly take account of the large leeway which must be left to the States in their administration of their own criminal justice." 365 U.S. at 547, 81 S.Ct. at 743.

Justice Frankfurter's concern in *Rogers* is that the federal courts respect the constitutional institution of federalism which affords the states the right to fashion appropriate procedures for the vindication of federal rights. Furthermore, the conditional order of release was predicated on a correct *initial determination* by the district court that the petitioner was in fact being held in derogation of his constitutional rights because the trial judge had not applied the proper constitutional standard to determine the admissibility of his confession. In the case before us, the district judge has made no prior determination that petitioner's confession was improperly admitted, nor could he have done so without carefully scrutinizing the record of the criminal trial, a substitute record thereof, or holding an evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Jennings v. Ragen, 358 U. S. 276, 79 S.Ct. 321, 3 L.Ed.2d 296 (1959); Conner v. Wingo, 409 F.2d 21 (6th Cir. 1969); Maes v. Patterson, 401 F.2d 200 (10th Cir. 1968); Thompson v. White, 391 F.2d 724 (5th Cir. 1968); Dentis v. Oklahoma, 376 F.2d 590 (10th Cir. 1967), cert. denied, 393 U.S. 927, 89 S.Ct. 261, 21 L.Ed.2d 263 (1968); Elesperman v. Wainwright, 358 F.2d 259 (5th Cir. 1966).

The "conditional order" cases cited by the majority likewise involved preliminary determinations that petitioner was being held in violation of his constitutional rights. Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964) (state procedures to determine voluntariness of confession not constitutionally adequate); Gladden v. Unsworth, 396 F.2d 373 (9th Cir. 1968) (constitutionally required procedure to determine voluntariness of confession not complied with).[3] Since the federal district court below made no independent and preliminary determination that petitioner's constitutional rights had been violated by the admission of his confession, the cases sanctioning conditional order of release after a federal court hearing are inapposite and do not support the majority's conclusion that the district court's order was proper.

Chessman v. Teets, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957), attracts the attention of the majority as "the most interesting precedent of all." From a public and historic standpoint it may be, but the case falls repetitively within the category of "conditional order" cases already discussed. The Supreme Court held that petitioner had been denied procedural due process because neither he nor his attorney was permitted to be present during the pro-

3. *Accord*, Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (failure of state trial court to inquire into competency to stand trial violated right to fair trial); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (state procedure to determine voluntariness of confession unconstitutional); Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951) (unconstitutional denial of right to appeal); Bosler v. Swenson, 363 F.2d 154 (8th Cir. 1966), aff'd, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967) (state procedure for provision of counsel for indigent criminal defendants on appeal unconstitutional).

ceedings to create a substitute transcript. The Court directed the district court to enter a conditional order, allowing the State a reasonable time within which to hold adversary proceedings to determine the accuracy of the transcript, failing which the petitioner was to be discharged. This order was based upon the proper preliminary determination that petitioner was being held in violation of the Constitution. In our case, there has been no such determination. Furthermore, California law provided for an automatic appeal in Chessman's case, and required that the entire record of the action be prepared. *Id.* at 158, 77 S.Ct. 1127. Given this California rule, procedural due process would of course require that the transcript be accurate and that defendant participate in person or by counsel at hearings to reconstruct the record of his trial. There is no Arizona statute by which an appeal is automatically taken, nor did Hart appeal his conviction within sixty days, as required by Ariz.R.Crim.P. 348(A). There is no rule in Arizona which required the state court in Hart's case to prepare an entire record.

The majority also attempts to support the propriety of the order as a "direct order" under the rationale of Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949). In that case, petitioner had filed for a writ of habeas corpus in the state sentencing court raising "substantial questions under the due process clause." 337 U.S. at 237, 69 S.Ct. at 1073. His petition was denied without a hearing. At that time, under Illinois law, habeas corpus was not an appropriate remedy for denials of due process. However, since then the Illinois Supreme Court had handed down decisions indicating that habeas corpus would be appropriate in such cases. Unfortunately, many lower state courts, whose decisions were not subject to review by the Illinois Supreme Court, continued to deny petitions for habeas on the old procedural grounds. On certiorari, the Supreme Court vacated the order of the state court denying the writ and remanded it for consideration in the light of the recent Illinois Supreme Court decisions. The State Attorney General had argued that the denial of habeas rested on an adequate nonfederal ground, but the Court refused to consider adequate a state procedure which denied consideration of denial of a federal right. The state must provide some procedure whereby a prisoner can raise his claims regarding denials of federal rights.

In the case before us, it is not argued that Arizona does not have any post-conviction procedures to consider claims of denials of federal constitutional rights. Furthermore, the direct order in *Young* was issued on direct review of the state court proceedings through certiorari, and not pursuant to a petition for habeas corpus.

The majority argues that the Arizona courts have not fulfilled the mandate of *Young* because they could not have considered petitioner's claims without reconstructing a transcript. What the majority fails to recognize is that *Young* does not disallow any state procedural ground which results in a refusal to consider constitutional claims, but only whose which systematically and unwarrantedly exclude such consideration. No such contention is raised with respect to the Arizona courts here.

For these reasons, I would vacate the order of the district court and remand the case for an evidentiary hearing.